UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OMNIPOINT COMMUNICATIONS, INC., d/b/a T-MOBILE, and OMNIPOINT NY MTA LICENSE, LLC,

                      *Plaintiffs*,

   -vs-

TOWN OF LAGRANGE, TOWN OF LAGRANGE ZONING BOARD OF APPEALS, TOWN OF LAGRANGE PLANNING BOARD, and TOWN OF LAGRANGE PLANNING, ZONING, AND BUILDING DEPARTMENT,

                      *Defendants*.

**DECLARATION OF JON P. DEVENDORF**

Civil Action No. 08-CV-2201 (WCC) (GAY) (ECF Case)

---

      Jon P. Devendorf hereby declares as follows:

      1.    I am an attorney duly licensed to practice law before the courts of the State of New York, and a partner at the law firm of Hiscock & Barclay, LLP, attorneys for plaintiffs, Omnipoint Communications, Inc., d/b/a T-Mobile, and Omnipoint NY MTA License, LLC (collectively, "T-Mobile"). I have been admitted to practice law before the Court in this matter. I am fully familiar with the facts and circumstances of this action.

      2.    I make this Declaration in support of T-Mobile's Motion for Partial Summary Judgment.

      3.    The purpose of this Declaration is to place before the Court certain relevant documents and evidence.

      4.    Attached hereto as Exhibit A is a true and correct copy of Section 240-49 of the Town of LaGrange's Code.

- 2 -

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 25, 2008                                                     s/ Jon P. Devendorf
                                                                                    Jon P. Devendorf

## CERTIFICATE OF SERVICE

I certify that on July 25, 2008, I filed a copy of the foregoing document with the Clerk of the Court via the CM/ECF system, which gave notice to the following attorney:

**Rebecca Ann Valk**   rvalk@vandewaterlaw.com

_____s/ Jon P. Devendorf_____
Jon P. Devendorf

# EXHIBIT A

Case 7:08-cv-02201-WCC   Document 21-2   Filed 07/25/2008   Page 1 of 6

### § 240-49. Wireless communications towers and facilities.

A. Purpose. It is the purpose of this section to protect the aesthetics of the Town of LaGrange, and the health and safety of the Town's residents, by regulating the siting and design of communications facilities located in the Town. Specifically, this section shall:

   (1) Establish clear standards for the location of communications facilities and accessory structures;

   (2) Minimize the total number of communications towers located within the Town of LaGrange;

   (3) Attempt to protect residential areas and sensitive land uses from the potential adverse impacts of communications towers;

   (4) Establish clear standards to minimize the negative aesthetic impacts of communications towers;

   (5) Establish a permitting system that ensures periodic reevaluation of the sites and communications towers;

   (6) Ensure timely removal of an abandoned or unused communications tower and accessory structures.

   (7) Encourage a streamlined approval process for proposed communications towers and accessory structures which comply with the regulations of this section.

B. Intent. These regulations are intended to be consistent with the Telecommunications Act of 1996 in that:

   (1) They do not prohibit, or have the effect of prohibiting, the provision of wireless communications services.

   (2) They are not intended to be used to unreasonably discriminate among providers of functionally equivalent services.

   (3) They do not regulate wireless communications services on the basis of the environmental effects of radio frequency emissions to the extent that the regulated services and facilities comply with the FCC's regulations concerning such emissions.

C. Compliance with the State Environmental Quality Review Act. The Planning Board shall comply with all provisions of the State Environmental Quality Review Act under Article 8 of the Environmental Conservation Law and its implementing regulations. An application for a communication facility that conforms to the regulations of this section and the Town of LaGrange Town Law shall be an unlisted action. Should any variance from these regulations be requested, the proposed facility shall be considered a Type I action.

D. Special permit review. Except as otherwise set forth in this subsection, communications facilities are allowed in all zoning districts and overlay zoning districts subject to the granting of a special use permit. All applicants for new communications facilities shall conform to the application procedures and requirements required by the special use permit review process detailed in this section, as well as those found within §§ 240-71 and 240-72 of this chapter. However, with respect to the R-120, R-80, R-40/60/80, H and TC-R Zoning Districts, and any overlay districts found therein, no portion of such residential zoning districts, or of any overlay district found therein, that meets the following criteria shall constitute a permissible site for establishment of a new tower to be used as a part of a communications facility:

   (1) Land comprising any portion of a lot of less than 10 acres in size, whether or not improved by a dwelling, which was created by means of a land subdivision approved by the Town of LaGrange Planning Board, where the purpose of such land subdivision was to establish lots for the construction of single-family or multifamily residences;

   (2) Land having a means of proposed access from a public or private road which was laid out and established as part of a land subdivision approved by the Town of LaGrange Planning Board, where the purpose of such land subdivision was to establish lots for the construction of single-family or multifamily residences, or lands having a proposed means of access by private easement over a lot created by such a land subdivision; or

   (3) A parcel of less than 10 acres which is already devoted to principal use as a residential dwelling.

E. Decision. Any decision of the Planning Board to grant or deny an application shall be in writing and supported by substantial evidence on the record.

F. Siting. Communications facilities shall be sited, to the maximum extent feasible, on existing tall structures such as utility poles, silos, buildings, church steeples, water tanks, and the like. Applicants must demonstrate exhaustion of all reasonable efforts to site facilities on existing structures before approval shall

be granted to construct a new communications tower.

G. Bulk requirements. In preparing its decision concerning any application, the Planning Board shall consider the standards detailed in Article VII, § 240-72E, Planning Board standards for project development plan approval, as well as the following:

(1) Lot siting. All structures, access roads, buffers, setbacks, fences, and all other facility appurtenances shall be located on one lot and shall not straddle a boundary line.

(2) Height. The total height of proposed structures and accessory elements shall not be more than the maximum allowed in the zoning district in which the facility is to be located and shall be measured from the natural ground level to the top of the structure or the top of the uppermost fixture, antenna, or appurtenance affixed to the structure, whichever is higher.

(3) Lighting. The lighting of the area surrounding a communications facility shall be in keeping with the needs and safety of the surrounding neighborhood. No light shall be permitted to spill from the site onto surrounding properties, and every attempt shall be made to prevent light from spilling into and beyond the buffer strip. Communications towers shall not be illuminated by any artificial means, including strobe lighting, unless required by the Federal Aviation Administration (FAA) or other federal authority.

(4) Noise. When a facility has power equipment on site, including both temporary equipment, including but not limited to tools and generators, or permanent equipment, including but not limited to HVAC and emergency generators, steps shall be taken to minimize, to the maximum extent feasible, the amount of noise heard off site.

(5) Location and setbacks.
   (a) All communications facilities are prohibited within 1,000 feet of any park, school, or day-care center;
   (b) All communications facilities are prohibited within 500 feet of any occupied residential dwelling unless expressly permitted, in writing, by all inhabitants of the dwellings within a radius of 500 feet of the proposed communication facility;
   (c) The proposed yard setbacks from the property line must be no less than three times the height of the tallest proposed structure or the setback requirements in the existing zoning regulations, whichever is greater.
   (d) The maximum area permitted to be cleared shall be no more than 50 feet in extent from the outer edge of the primary structure's footprint.
   (e) During construction and installation of facilities and structures, only the minimum amount of existing vegetation shall be cleared.

(6) Buffer strip. A buffer strip is required to minimize, to the maximum extent possible, any visual impacts of the proposed freestanding facilities.
   (a) The buffer shall be a minimum of 25 feet wide and shall begin at the outer edge of the cleared area. The buffer strip shall contain, or be planted with, vegetation of sufficient height and density as determined by the Planning Board.
   (b) The buffer strip shall be free of any man-made structures, including but not limited to fences, facilities, and roads.

(7) Signage. Only signs that are for security purposes are permitted on communications facility structures. All other signs are prohibited on all communications facilities.

(8) Security. If the Planning Board determines that a security fence is necessary, said fence shall surround all structures and guy wires and shall be at least six feet high and opaque in nature.

(9) Maintenance. A safety and structural inspection of the facility shall be prepared by a licensed professional engineer every four years. The report shall be submitted to the Zoning Administrator. All costs associated with the inspections shall be paid by the facility owner.

(10) Collocation.
   (a) All wireless communications facility structures should be of a type and design that will maximize collocations.

(b) Collocation is required of a communications facility unless the applicant has provided clear and convincing evidence that:

[1] There are no other usable existing structures in service area.

[2] Collocation does not achieve the minimum reasonable technical needs of the proposed facility.

[3] Structural or other engineering limitations, absent reasonable refurbishment, are clearly demonstrated to be prohibitive to the proposed facility.

[4] After demonstrated thorough and good faith efforts, the applicant is unable to secure permission from another facility or structure owner to collocate.

(11) Clustering. The clustering of towers and structures on the same site should be considered if collocation cannot be facilitated.

(12) Alternative technologies. The use of repeaters and other alternative technologies is strongly encouraged in order to reduce or minimize the number and height of towers in the Town.

(13) Visual appearance.
   (a) All equipment shelters and accessory structures shall be architecturally uniform and no taller than 12 feet.
   (b) All equipment shelters shall be used only for the housing of equipment related to the particular facility on the particular site.
   (c) Materials and colors for proposed communications facility structures shall be of an appearance that is compatible with any surrounding structures and/or vegetation to the maximum extent practicable and as approved by the Planning Board.
   (d) Facility design shall incorporate, to the maximum extent feasible, alternative designs that minimize a discordant intrusion on the aesthetic landscape. Alternative designs shall be considered and shall include the camouflaging of the facility in order to make it blend in with surrounding structures and facilities.

H. Application requirements. In addition to the requirements and fees outlined in Article VII, § 240-71G, Required plan, and § 240-72C, Application procedures, an applicant proposing to construct a communication facility in the Town shall also complete or submit the following:

(1) Applicants shall meet with the Zoning Administrator prior to submitting a formal application for a proposed communication facility. The purpose of the preapplication meeting is for the applicant to disclose to the Zoning Administrator:
   (a) The specific location and nature of the proposed facility; and
   (b) The applicant's proposal and date for a visual analysis.

(2) The applicant shall complete fully the Town of LaGrange "Application for Communication Tower Siting Approval."

(3) A SEQR full environmental assessment form (Parts I, II, and III).

(4) A five-year buildout plan for the proposed site and other sites within the Town and within adjacent towns, clearly demonstrating the applicant's plans for other structures, proposed application and building dates, and justification for additional structures. Additionally, the five-year buildout plan must take into consideration known and potential changes in technology which may have an effect on the number, design, and type of facilities needed in the near future. In keeping with the buildout plan, the applicant shall also notify the Planning Boards of all adjacent communities and the Coordinator of the Dutchess County Office of Emergency Response concerning the location and height of the proposed action.

(5) The applicant for a new communications facility must demonstrate a proposed structure's ability to handle additional collocators and must identify the maximum number of collocators, or alternative collocation strategies, that could be supported on the structure.

(6) The applicant shall provide to the Town a copy of the applicant's liability insurance, which shall name

the Town as an additional insured party.
- (7) A copy of the applicant's FCC licenses for service in the proposed area.
- (8) The applicant must identify the number, size, type, materials, manufacturer and model number, and location of antennas or other types of transmitting devices, including but not limited to microwave dishes or microwave panels to be placed on the structure.
- (9) The applicant must provide clear and convincing evidence that the proposed height and bulk of the facility is the minimum necessary to provide licensed communications services to locations in the Town which the applicant is unable to serve with existing facilities and with a facility of a lower height.
- (10) The applicant must provide clear and convincing evidence that the visual, aesthetic, and community character intrusion impacts have been minimized to the maximum extent practicable.
- (11) The applicant must submit landscaping and reclamation plans in the event of future structure removal. This plan shall include provisions for site remediation, landscaping, removal of structures, utility lines, and accessory structures and shall cover the building site and buffer area controlled by the facility owner.
- (12) The applicant must demonstrate by clear and convincing evidence the exhaustive consideration of alternative sites, alternative technologies, and alternative design considerations, which include but are not limited to alternative structure types and heights, materials, colors, multiple smaller structures versus one larger structure, or other design parameters as may be requested by the Planning Board. The applicant must also document and inventory all tall structures within four miles of the proposed location and provide a qualification as to each structure's ability to meet the service requirements of the applicant.
- (13) All electrical power supply service to all structures and facilities shall be installed underground, and plans for the installation shall be approved by a licensed professional engineer.
- (14) A visual analysis, conducted after sufficient public notice and open to the public, the methodology of which is to be approved by the Planning Board prior to the commencement of this analysis.
- (15) Additional information as requested by the Planning Board and/or the Town Zoning Administrator.

I. Duration of special use permits.
- (1) The special permit shall expire after two years from date of approval by the Planning Board.
- (2) The applicant has one calendar year from date of approval of the special permit to commence construction; if construction is not begun within this year, the special permit shall expire.

J. Renewal of special use permits.
- (1) Renewal must not be unreasonably withheld if the applicant is in conformance with the original approval and all conditions attached thereto.
- (2) No less than 60 days prior to the expiration of a special use permit, the holder of the special use permit must submit to the Zoning Administrator a renewal application for the special use permit. If the holder fails to submit the application within the sixty-day period and has not arranged with the Zoning Administrator for an extension of the sixty-day period the special use permit will expire. The renewal application shall contain the following:
  - (a) A current, updated buildout plan.
  - (b) A special use permit renewal form.
  - (c) A statement of need that a structure is still in use and is still necessary to provide satisfactory service to its customers.
  - (d) The most recent structural and safety inspection report for all structures on site.
  - (e) Color photographs of the structure from all directions.
  - (f) Other materials or information deemed necessary by the Zoning Administrator.
- (3) Within 45 days of the submission of a completed application for a special use permit and a determination by the Zoning Administrator that the application is technically sufficient, the

   Administrator shall act on the special use permit application. A copy of the Administrator's decision shall be filed in the offices of the Town Clerk and Zoning Administrator and mailed to the applicant.

K. Alterations. All modifications to a structure shall require that the applicant submit a new special use permit application to the Planning Board. Exceptions that conform to Subsection K(1) and (2) below do not require a new special use permit:

 (1) Increasing the originally approved size of any structure's building footprint a maximum of 250 square feet; and

 (2) Increasing the originally approved height of the structure by a maximum of 10 feet.

L. Structure removal.

 (1) If a special permit has expired, the communication facility owner or user has lost its FCC license, or a continued need for the facility has not been demonstrated to the satisfaction of the Town, the structure and accessory structures must be dismantled and removed.

 (2) Within 90 days from the date of the Zoning Administrator's decision to require facility removal, the owner shall completely remove the structure and all accessory structures from the site.

 (3) Site remediation shall be completed in conformance with the reclamation plan and to the satisfaction of the Planning Board within 180 days of structure removal.

 (4) Upon each application for a special permit or renewal thereof pursuant to § 240-49J, the Town Engineer shall determine the cost of removal of a wireless communications facility for which a special permit or renewal has been requested. The owner of the facility or any other person with an interest in the facility deemed suitable by the Town shall, prior to issuance of a special permit, or any renewal thereof, provide the Town with security to cover the cost of removal of the facility, in one of the following forms:

  (a) A letter of credit in the amount of the cost of removal for the term of the special permit, plus 90 days, or such lesser initial terms as the Town shall approve, subject to draw down by the Town to defray the cost to the Town of removal when the facility has not been removed in conformity with the provisions of this section; or

  (b) The cash deposit of the cost of removal into an escrow account in the name of the Town subject to withdrawal of the deposited funds by the Town to defray the cost of removal of the facility when the facility has not been removed in conformity with the provisions of this section.

 (5) Prior to the issuance of a special permit under § 240-49, the owner of the facility and/or, if different, the owner of the underlying real property shall deliver to the Town a recordable license of suitable duration with the Town of LaGrange as grantee, authorizing access to the site and structure by the Town or its designee to remove the facility.