UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
OMNIPOINT COMMUNICATIONS INC.,
d/b/a T-MOBILE, AND
OMNIPOINT NY MTA LICENSE, LLC

|  | |
|---|---|
| Plaintiffs, | MEMORANDUM OF |
| - against- | LAW |
| | 08 CV. 2201 (WCC) (GAY) |
| | (ECF CASE) |

TOWN OF LAGRANGE,
TOWN OF LAGRANGE ZONING BOARD OF APPEALS,
TOWN OF LAGRANGE PLANNING BOARD, AND
TOWN OF LAGRANGE PLANNING, ZONING AND
BUILDING DEPARTMENT

                          Defendants.
------------------------------------------------------------------------x

## STATEMENT OF FACTS

The Plaintiffs, Omnipoint Communications Inc., d/b/a T-Mobile (hereinafter "T-Mobile") and Omnipoint NY MTA License, LLC have filed the instant action claiming, *inter alia*, various violations of the Telecommunications Act of 1996 (Amended Complaint ¶¶172-207) and for relief under CPLR Articles 30 and 78. (Amended Complaint ¶¶208-237).

By letter dated December 30, 2003, Plaintiff T-Mobile submitted an application to Defendant Town of LaGrange Department of Planning, Zoning and Building (hereinafter the "Building Department"), for site plan and special use permit approval for the construction by T-Mobile of a 190' tower on lands owned by Frank Redl (hereinafter referred to as the "Redl Application") (Record at 015-075)[1].  The Redl Application was placed on the April 20, 2004 agenda of the Defendant Town of LaGrange Planning Board (hereinafter the "Planning Board") for an "Initial Presentation". (R.084-096).

---

[1] All future references to the Record will appear as (R.__).

After April 20, 2004, T-Mobile placed the Redl Application on hold. (R.166, April 25, 2005 letter of Jeffrey W. Davis, Esq. "After the information meeting T-Mobile elected to place the application on hold…") One year later, the Redl Application was withdrawn by letter from T-Mobile's counsel dated April 25, 2005. (R.166).

On May 20, 2005, T-Mobile submitted a *new* application to co-locate nine (9) antennas on a tower own by American Tower Corporation ("ATC") at 20 Vervalen Drive in the Town of LaGrange. (the "Vervalen Application") (R.167-233). The ATC Tower is governed by a January 22, 2004 Order of the Honorable Charles L. Brieant (hereinafter the "January 2004 Order") (R.076-079). Pursuant to the January 2004 Order, ATC was permitted to remove an existing tower at 20 Vervalen Drive, construct a new monopole tower, and for Nextel of New York to locate a facility of twelve (12) antennas on the new tower. (R.078). The Court specified that "any future modifications or additions to the New Monopole or the Nextel Facility shall comply with any existing Town Zoning Code…" (R.078).

T-Mobile appeared before the Planning Board at its workshop session on July 5, 2005 to present the Vervalen Application. (R.241). During November 2005 T-Mobile delivered an escrow deposit to the Town in the sum of $2500 to cover consultant review, pursuant to the Town's request. (R.248, 252-253). On December 14, 2005, the Town Engineer, Chazen Engineering and Land Surveying (hereinafter "Chazen") issued a comment letter regarding the substance of the Vervalen Application. (R.256-259). On December 20, 2005, the Planning Board scheduled a public hearing to be held on January 17, 2006 (R.260-263).

The public hearing was opened on January 17, 2006 (R.330-333). At the end of the public hearing, some of the residents in attendance raised certain questions regarding whether ATC was in compliance with the January 2004 Order, particularly ATC's continued use of "old" (i.e. preexisting) facilities.[2] (R.333) The Town's Zoning Administrator "brought up the issue of dangling wires and said it was the first time he heard about it" and the Planning Board Chairman indicated that the "board would look into [the residents' concerns]" (R.333).   In response, T-Mobile's attorney stated the following:

> [F]rom T-Mobile's perspective [I] would prefer not to come back to the board for the public hearing until the issues [are] addressed with American Tower. (R.333)

As a result of Mr. Davis' comment, the Planning Board adjourned the public hearing (R.333).   The Town did not receive any additional communication from T-Mobile until August 7, 2007 (R.377).

As mentioned above, the failure to remove pre-existing equipment was one of the concerns of residents at the January 17, 2006 Planning Board meeting. (R.333). On April 4, 2006, ATC received a building permit to remove the pre-existing Nextel equipment shelter & relocate the existing utilities. (R.356-357, 361-362).   The Town continued to work with ATC on achieving compliance with the January 23, 2004 Order, culminating in the issuance of a Certificate of Compliance on August 2, 2007 and a Use Permit on August 3, 2007 (R.337-375)

---

[2]  The January 2004 Order provides that "…Omni at its sole cost and expense shall completely remove the Existing Tower, all guy wires and any other unnecessary above ground structures from the Property." (R.078)

Upon issuance of the Certificate of Compliance, and in accordance with T-Mobile's wishes, the T-Mobile application was revived by T-Mobile's appearance at the September 4, 2007 Planning Board workshop meeting. (R.378). At that time, the Planning Board reminded T-Mobile that a variance would be needed from Town of LaGrange Town Code (hereinafter the "Town Code) §240-49(G)(5)(b)[3], which prohibits communications facilities within 500 feet of any occupied residential dwelling. (R.378). The need for a variance had been previously brought to the attention of T-Mobile's counsel by letter dated April 3, 2006 (R.358-360; see also Amended Complaint at ¶91)

T-Mobile submitted its application for an area variance by letter dated September 25, 2007 (hereinafter the "Area Variance Application") (R.378-451).  Over the next four months, the following occurred:

- November 5, 2007, the ZBA opened the public hearing on the Area Variance Application, comments were received and the public hearing was adjourned (R.465-475);

- December 3, 2007, the ZBA again adjourned the public hearing as the Vervalen Application had not received a determination of significance under the State Environmental Quality Review Act ("SEQRA") (R.484-487);

- December 18, 2007, the Planning Board set a public hearing on the Vervalen Application for January 22, 2008 (R.487-496);

- On January 22, 2008, the Planning Board issued a Negative Declaration under SEQRA (R.525-535, 539-543 as corrected on February 26, 2008 at R. 589, 591-595);  and

---

[3]  Town of LaGrange Town Code Section 240-49 is attached to the Valk Declaration of July 25, 2008 as Exhibit "A".

- On February 4, 2008, the ZBA denied the requested Area Variance Application (R.552-560, 563).

The Plaintiffs' then brought this action seeking, *inter alia*, to vacate the determination of the ZBA, and for an injunction compelling all Defendants to issue any and all approvals.

The Defendants' now cross-move for summary judgment[4] as follows:

1.     Dismissal of the Fifth Claim ("Substantial Evidence") alleging a violation the Telecommunications Act ("TCA") §332(c)(7)(B)(iii) as contained within the Amended Complaint dated April 4, 2008, as against the Town of LaGrange Planning Board and the Town of LaGrange Department of Planning, Zoning and Building;

2.     Dismissal of the Sixth Claim ("Effective Prohibition of Service") alleging a violation of the TCA §332(c)(7)(B)(i)(II) as contained within the Amended Complaint dated April 4, 2008, as against the Town of LaGrange Planning Board and the Town of LaGrange Department of Planning, Zoning and Building;

3.     Dismissal of the Eighth Claim ("Improper Denial based on Environmental Effect of Radio Frequency Emissions") alleging a violation of the TCA §332(c)(7)(B)(iv) as contained within the Amended Complaint dated April 4, 2008, as against all of the Defendants;

4.     Dismissal of the Ninth Claim ("State Law Declaratory Relief for Improper Imposition of Variance Requirement") as contained within the Amended Complaint dated April 4, 2008, as against all of the Defendants; and

---

[4]  Contemporaneously with the filing of this motion, the Plaintiffs' have also filed a motion for partial summary judgment.

5. Dismissal of the Tenth Claim ("State Law Claims") seeking relief under CPLR Article 78 as against the Town of LaGrange Planning Board and the Town of LaGrange Department of Planning, Zoning and Building.

## ARGUMENT

### POINT I
### NEITHER THE DEFENDANT PLANNING BOARD NOR DEFENDANT BUILDING DEPARTMENT HAS MADE A FINAL DETERMINATION
*(Addressing the Plaintiffs' Ninth and Tenth Claims as alleged against the Defendants Planning Board and Building Department)*

The Plaintiffs' Ninth and Tenth claims fail as against the Planning Board and the Building Department because neither defendant has made a final determination.

A.     The Planning Board is without authority to interpret the Town's zoning law

The Planning Board has not made a final determination. The Planning Board has been prevented from making any final determination because the Town Code requires a variance from the ZBA, which T-Mobile was denied. The Plaintiffs' argue that the Planning Board improperly "required" T-Mobile to make application to the ZBA (Amended Complaint at ¶215) because the Planning Board pointed out relevant portions of the Town Code. The Plaintiffs attempt to convert the Planning Board's comment, that the Town Code requires T-Mobile to seek an area variance, to a "final determination" of the Planning Board. The Plaintiffs' argument must fail because the Planning Board is without the authority to interpret the Town's zoning law.

The Plaintiffs' challenge the Planning Board's statement, during the September 4, 2007 workshop meeting, that a variance from Town Code §240-49(G)(5)(b) is required. (R.378-379). A Planning Board is "without power to interpret the provisions of the local zoning law, a power which is vested exclusively in the building inspector and the Zoning Board of Appeals." Matter of Jamil v. Vill. of Scarsdale Planning Bd., 24 A.D.3d 552, 554 (2d Dept. 2005).

The Town of LaGrange Town Code provides that "[a]ll communications facilities are prohibited within 500 feet of any occupied residential dwelling unless expressly permitted, in writing, by all inhabitants of the dwelling within a radius of 500 feet of the proposed communication facility." Town Code §240-49(G)(5)(b). A "wireless communications facility" is defined as "[a] term intended to include all of the various facilities that provide communications services, including tower, antenna, and any accessory structures or equipment designed and constructed for use by a commercial provider of such services." Town Code §240-112[5]

In this case, the Planning Board reviewed the language of §§ 240-49(G)(5)(b) and 240-112 on their face and stated to the applicant that a variance would be required.

The Plaintiffs' argue that the Planning Board's black and white reading of the Town's zoning code was improper because the "proposed antenna co-location will not change any existing tower setbacks" (Amended Complaint at ¶215) and that "[a]pplication of the 500 foot setback provision to existing towers appears counterintuitive…" (R.378). The Planning Board simply cannot consider these arguments. The drafters of the Town Code could have easily exempted co-locations from

---

[5] Town of LaGrange Town Code Section 240-112, definition of "wireless communication facility" is attached to the Valk Declaration of July 25, 2008 as Exhibit "D".

application of the 500 foot requirement, but that was not done. The Planning Board does not have the authority to look behind the local law and, therefore, declaratory relief against the Planning Board is improper for this reason. See Matter of Woodland Cmty. Ass'n v. Planning Bd of the Town of Shandaken, 2008 N.Y. Slip Op. 5417 (3d Dept. 2008); Jamil, 24 A.D.3d at 554.

Article 78 relief cannot lie as against the Planning Board because the Planning Board has not made a final determination. A final determination is one that has a "direct and immediate" effect on the Plaintiffs'. Matter of Sterling Idea Ventures v. Planning Bd. of the Town of Southold, 173 A.D.2d 475, 570 N.Y.S.2d 96, 96 (2d Dept 1991). It is a decision that inflicts an "'actual, concrete injury.'" Church of St. Paul & St. Andrew v. Barwick, 67 N.Y.2d 510, 505 N.Y.S.2d 24, 30, 496 N.E.2d 183 (1986), cert. denied 479 U.S. 985, 107 S. Ct. 574, 93 L. Ed. 2d 578 (1986) {quoting Williamson County Reg'l Planning Comm'n. V. Hamilton Bank, 473 U.S. 172, 105 S. Ct. 3108, 3120, 87 L.Ed.2d 126 (1985) (superseded by statute on other grounds as indicated in Sprint Spectrum L.P. v. City of Carmel, 361 F.3d 998, 2004 U.S. App. LEXIS 5341 (7th Cir. Ind. 2004))}. The Planning Board's mere acknowledgment that the Town Code requires an area variance results in no actual or concrete injury to T-Mobile. The Planning Board cannot cause T-Mobile any injury by merely directing them to the relevant code sections.


B.    The Building Department has not been asked to render any determination

The Record is clear that T-Mobile has not submitted any applications to the Building Department for any permits or approvals within the jurisdiction of that Department. Waterways Dev. Corp. v. Lavalle, 28 A.D.3d 539 (2d Dept. 2006).

Plaintiffs' ninth claim fails as against the Building Department because a final determination is required in order to maintain an Article 78 proceeding in the nature of mandamus to review.  Sterling Idea Ventures, 570 N.Y.S.2d at 96.

Plaintiffs' tenth claim fails as declaratory relief cannot lie as against the Building Department when the Plaintiffs' have not even submitted an application to that Department – they have failed to exhaust their administrative remedies. Lehigh Portland Cement Co. v. NY State Dep't of Envtl. Conservation, 87 N.Y.2d 136 (1995).


In sum, the Plaintiffs' ninth and tenth claims must be dismissed as against the Planning Board; the Planning Board has not made a final determination because the Planning Board is without the authority to interpret the Zoning Law of the Town of LaGrange.

Plaintiffs' ninth and tenth claims must be dismissed as against the Building Department because the Building Department has not made a final determination; T-Mobile failed to exhaust its administrative remedies by failing to request a written interpretation from the Building Department.


## POINT II
### T-MOBILE'S REQUEST FOR DECLARATORY RELIEF MUST BE DENIED AS THE ZBA DOES NOT HAVE THE JURISDICTION TO PROVIDE T-MOBILE WITH THE "INTERPRETATION" REQUESTED
*(Addressing the Plaintiffs' Ninth Claim as alleged against the Defendant ZBA)*

The Plaintiffs' ninth cause of action, alleging an improper imposition of a variance requirement must be dismissed as against the ZBA because the ZBA does not have the jurisdiction to render the "interpretation" requested by T-Mobile

A.     The ZBA lacked jurisdiction to consider T-Mobile's "letter application" for an interpretation because T-Mobile failed to exhaust its administrative remedies

The Plaintiffs' incorrectly assert that the ZBA "refused to address T-Mobile's request for interpretation and by doing so deemed a variance to be required."  The Plaintiffs' have overlooked the fact that the ZBA did not have jurisdiction to consider the T-Mobile's "letter application" for an interpretation of Town Code §240-49(G)(5)(b).

Town Law 267-a provides that the authority of the ZBA is appellate only and shall be limited to "hearing and deciding appeals from and reviewing any order, requirement, decision, interpretation or determination made by the administrative official charged with the enforcement of any ordinance or local law adopted pursuant to this article.".  The ZBA has no original jurisdiction unless granted additional authority by the municipality through a local law or ordinance.  Matter of Gaylord Disposal Serv., Inc. v. ZBA of the Town of Kinderhook, 175 A.D.2d 543, 544-45 (3d Dept. 1991); appeal denied by 78 N.Y.2d 863 (1991).

Town of LaGrange Town Code, Chapter 240 "Zoning" states that "The Zoning Board of Appeals shall, upon appeal from a decision by an administrative official, decide any question involving the interpretation of any provision of this Chapter."  Town Code §240-92(D)[6].  Pursuant to Town Code §240-82, the "administrative official" who makes the decision in the first instance is the Building Inspector.[7]

---

[6]  Town of LaGrange Town Code Section 240-92 is attached to the Valk Declaration of July 25, 2008 as Exhibit "C".
[7]  Town of LaGrange Town Code Section 240-82 is attached to the Valk Declaration of July 25, 2008 as Exhibit "B".

The record is clear that T-Mobile did not request an interpretation the responsible administrative official.   (R.520). Therefore, the ZBA was without the authority to consider T-Mobile's "letter application" for an interpretation.   Barron v. Getnick, 107 A.D.2d 1017, 1017 (4th Dept. 1985) ("Petitioner made no application for the relief requested to the building inspector nor did the latter make any determination. Consequently, petitioner is not aggrieved nor, under the circumstances, did the Zoning Board of Appeals have jurisdiction to consider the matter without a prior determination made by the building inspector.")

**B.      The ZBA does not have jurisdiction to render an interpretation of the January 2004 Order**

By letter dated January 18, 2008, T-Mobile's counsel requested that the ZBA render the following interpretation:

> Given the language in the January 23, 2004 court order settling the Nextel/OmniAmerica versus Town of LaGrange law suit regarding the subject tower, and given that the proposed Omnipoint co-location does not alter, in any way, the existing court approved tower setbacks, is Zoning Law Section 240-49(G)(5)(b), requiring a 500 foot setback to the nearest residential structure, applicable to Omnipoint's co-location application?  (R.520)

Even if T-Mobile had followed the proper administrative remedies so that ZBA's appellate jurisdiction was properly invoked, the ZBA was without the authority to consider T-Mobile's "letter application" for an interpretation.  The ZBA was without jurisdiction to render the "interpretation" requested by T-Mobile because the request requires the ZBA to interpret the January 2004 Order - a matter outside of the Town of LaGrange Zoning law.

11

Town Law 267-a provides that the authority of the ZBA shall be limited to "hearing and deciding appeals from and reviewing any order, requirement, decision, interpretation or determination made by the administrative official charged with the enforcement of any ordinance or local law adopted pursuant to this article." (emphasis added). Further, Town of LaGrange Town Code, Chapter 240 "Zoning" states that "The Zoning Board of Appeals shall, upon appeal from a decision by an administrative official, decide any question involving the interpretation of any provision of this Chapter." Town of LaGrange Town Code §240-92(D) (emphasis added).

T-Mobile's "interpretation" request can actually be broken down into two separate interpretation questions. The first question asks "Given the language in the January 23, 2004 court order settling the Nextel/OmniAmerica versus Town of LaGrange law suit regarding the subject tower… is Zoning Law §240-49(G)(5)(b), requiring a 500 foot setback to the nearest residential structure, applicable to Omnipoint's co-location application." The ZBA has no jurisdiction to interpret what was the intent of the Honorable Charles Brieant when he entered the January 2004 Order because the Town of LaGrange ZBA is only given the authority to interpret the Town of LaGrange Zoning Law. Therefore, the ZBA did not have the jurisdiction to consider this interpretation request.

The second question asks "[g]iven that the proposed Omnipoint co-location does not alter, in any way, the existing court approved tower setbacks, is Zoning Law §240-49(G)(5)(b), requiring a 500 foot setback to the nearest residential structure, applicable to Omnipoint's co-location application." Once again, T-Mobile has tied the question to the January 2004 Order.

It is respectfully submitted that because the ZBA did not have the jurisdiction to interpret the January 2004 Order, this Court is also without jurisdiction to interpret that Order. T-Mobile is asking this Court to interpret the January 2004 Order issued by Judge Brieant and make a finding that the January 2004 Order somehow binds the Vervalen Application. This request of the Planitiffs' is improper because it asks this Court to issue an advisory ruling as to the intent and implications of Judge Brieant's Order.

In sum, the Plaintiffs' ninth claim fails against the ZBA because T-Mobile failed to submit a request for a written interpretation from the Building Inspector so that such written interpretation could be appealed to the ZBA. The ninth claim also fails as against the ZBA because the ZBA is without jurisdiction to review the January 2004 Order of Judge Brieant, a matter outside of the Town Zoning law.

## POINT III
## REMAND IN THIS CASE TO THE PLANNING BOARD AND
## THE BUILDING DEPARTMENT WOULD NOT BE FUTILE
*(Addressing the Fifth claim as against the Defendants*
*Planning Board and Building Department, and addressing*
*the relief sought by the Plaintiffs' in claims five, six, eight,*
*nine and ten)*

The Plaintiffs' devote a significant amount of attention in the Amended Complaint to allegations that the Defendants' have delayed processing of the Vervalen Application and that any remand would be futile because of the alleged delay. (Amended Complaint at ¶¶55-142) However, the Record is clear that any alleged delay in the processing of the Vervalen Application is attributable to T-Mobile.

On December 30, 2003, T-Mobile filed its *original* application – the Redl Application. (R.015-075). Approximately one month later, T-Mobile submitted the

requisite escrow check of $1,000.00 by letter dated February 4, 2004.   At that time the processing of the application commenced.   T-Mobile's counsel appeared at a meeting of the Town of LaGrange Planning Board on April 20, 2004 for an "Initial Presentation" (R.088) and the application was discussed at length. (R.088-090).

T-Mobile decided not move forward with the application at the Redl site. (R.166) Instead, one year later, T-Mobile sent a letter to the Town stating "[a]fter the information meeting T-Mobile elected to place the application on hold and wait for the litigation surrounding the neighboring tower to be settled." (R.166; see also R.330) (emphasis added).   It should be noted that that Vervalen litigation had settled on January 23, 2004, approximately three (3) months prior to T-Mobile's appearance at the Planning Board on April 20, 2004 (R.076-079) and T-Mobile's counsel was aware of this information (Amended Complaint at ¶69: "Immediately following the April 20, 2004 Planning Board meeting, T-Mobile was informed by Attorney Blass…that the ATC Site Litigation had 'settled'…").   Thus, there was no need for T-Mobile to "wait" for a settlement between April 20, 2004 and April 25, 2005.

For reasons that are unclear, T-Mobile failed to prosecute an application from April 20, 2004 through May 20, 2005 - the date on which T-Mobile submitted the Vervalen Application (R.167-233).   Plaintiffs' attempts to blame the Town for the 17-month window of time from December 23, 2003 through May 20, 2005 are improper and misleading.   It was T-Mobile who chose to put the Redl application on hold.   It was T-Mobile who chose to withdraw the Redl application.   It was T-Mobile who chose to make a *new* application for co-location at Vervalen.   Any delay occurring between December 23, 2003 and May 20, 2005 can be attributed to T-Mobile and only T-Mobile.

T-Mobile appeared at a Planning Board workshop on July 5, 2005 for discussion of its new Vervalen Application. (R.241). The Town Engineer, Chazen, issued a comment letter on December 14, 2005 (R.256-259). At the December 20, 2005 meeting of the Planning Board, a public hearing was scheduled for January 17, 2006 (R.262).

On January 17, 2006 the Planning Board opened the public hearing (R.330-333). During the public hearing, the public in attendance raised certain questions regarding whether ATC was in compliance with the January 2004 Order. (R.333). After discussion, T-Mobile's attorney stated the following:

> [F]rom T-Mobile's perspective [I] would prefer not to come back to the board for the public hearing until the issues [are] addressed with American Tower. (R.333).

As a result of Mr. Davis' comment, the Planning Board adjourned the public hearing (R.333). Thereafter, the Town did not receive any communication from T-Mobile until August 7, 2007 (R.377).

In April 2006, the Town raised a question with T-Mobile's counsel regarding the Town's concerns regarding possible segmentation under SEQRA (R.358-360). The question was prompted by a contemporaneous conversation with representatives of ATC in which ATC indicated that additional providers were seeking to co-locate on the ATC Tower (R.358-360). The substance of this letter was only indirectly responded to by T-Mobile and ATC approximately twenty (20) months later (R.497, 516)

As detailed above and as evidenced in the Record at Page 333 and by T-Mobile's failure to respond to the April 2006 letter for some twenty (20) months, T-Mobile indicated that it "would prefer not to come back to the board for the public hearing until the issues were addressed with American Tower". In conformance with T-Mobile's

wishes, once the issues surrounding ATC were resolved, the T-Mobile application was scheduled for the September 4, 2007 Planning Board workshop meeting. At the September 4, 2007 meeting, T-Mobile was reminded that an area variance would be needed. {R.377, 378 (referencing the September 4, 2007 workshop meeting)}

T-Mobile chose not to submit the Area Variance Application under September 25, 2007, even though the need for an Area Variance had been raised to T-Mobile at least twice before.

During the April 20, 2004 Planning Board meeting, T-Mobile's counsel asked a very specific question:

> Mr. Davis asked if in fact an antenna going on a tower needed to be 500' from the house, *even if the tower was already there*. Mr. Blass responded that the Planning Board has had at least 3 or 4 of these situations in the last couple of years. (R.090) (emphasis added)

Moments later, Mr. Blass clarified his response; "Mr. Blass said [the 500' setback requirement] would be overridden by the variance in respect to the Redl component, but it would apply to the T-Mobile application." (R.090). While it is acknowledged that Mr. Davis was seeking this information in the context of the Redl application; he was advised of the Town's opinion on the matter.

Subsequently, in a letter dated April 3, 2006, the Town's Director of Planning and Zoning stated the need for the variance and noted that T-Mobile has not yet applied for the required variance (R.359).

First, T-Mobile chose to withdraw the Redl Application one year after T-Mobile elected to place the Redl Application on hold. Second, T-Mobile unequivocally stated that it did not wish to proceed with the public hearing at the Planning Board until the

issues with ATC were resolved.  Third, T-Mobile chose not to respond to the April 2006 letter or to apply for a variance in the interim between the January 2006 meeting and when the ATC issues resolved in August 2007.  It was only after the ATC issues were resolved, that on August 7, 2007 T-Mobile advised the Town that it wished to "renew [its] previous application".  Once, the condition precedent imposed by T-Mobile was satisfied on August 3, 2007 upon issuance of a use permit, the Town put T-Mobile's application on the very next agenda of the Planning Board.

A.       Remand would not be futile under the Telecommunications Act

As a result of T-Mobile's repeated delays, this case is distinguishable from those cases that find that remand would be futile.  In all such cases, the municipality would attempt to delay the application through repeated requests for additional information and by continually raising concerns about "new" issues. See Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490 (2d Cir. 1999) (AT&T filed two separate special use permit applications, and the Town Board took over a year to process each separate application); Masterpage Comm. Inc. v. Town of Olive, 418 F.Supp.2d 66, 81 (NDNY 2005) (noting "[t]he Town's persistent and repeated requests regarding issues previously resolved" (emphasis added)); Omnipoint Comm. Inc. v. Vill. of Tarrytown Planning Bd., 302 F.Supp.2d 205 (SDNY 2004) (the Village subjected the applicant to a total of seven public hearings); Omnipoint Comm. Inc. v. Common Council of the City of Peekskill; 202 F.Supp.2d 210, 227 (SDNY 2002) (noting the City undertook "persistent evasive conduct").  Unlike the above-cited cases, it was not the Town in this instance that dragged out and delayed the application – it was T-Mobile.

The Record clearly indicates that any alleged delay is attributable solely to T-Mobile.  The errors alleged with the ZBA's determination should not "taint" the Planning Board and the Building Department because, regardless of the Court's determination regarding the ZBA's action, remand will serve a useful purpose. There is no evidence that any of the Defendants herein have sought to obstruct T-Mobile's application.   Even assuming there were any error in the ZBA's determination, which there is not, it is not because of some ill will or intent to obstruct the application. (R.557-558)

The TCA §332(c)(7)(B)(iii) states that any decision "by a local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."   The Defendant Planning Board and Building Department have not made a final determination, as discussed at Point I.  As there is simply no decision of the Planning Board or the Building Department for this Court to review under the substantial evidence standard, this matter should be remanded to those Defendants for further processing. This Court's decision regarding the ZBA's compliance with the substantial evidence standard should not bind either the Planning Board or the Building Department, as all delay in this matter is attributable to T-Mobile and no delay can be attributed to either the Planning Board or the Building Department.


B.      Remand would not be futile under CPLR Articles 30 or 78

The Plaintiffs are unable to prove, were this Court to annul the decision of the ZBA,  that remand for processing by the Planning Board and the Building Department would be futile.  Futility has been found when an administrative agency has given an

indication of how it will act on the matter. See Lehigh Portland Cement, 87 N.Y.2d at 140-143 (remand would be futile where the DEC had clearly and unequivocally stated its long-standing position on the issue); Matter of Cmty. Hous. Improvement Program Inc. v. NY State Div. of Hous. and Cmty Renewal, 230 A.D.2d 66, 69-70 (3d Dept. 1997).

There is nothing in the record to indicate that either the Planning Board or the Building Department has predetermined the issues to come before them. Matter of Grattan v. Dept. of Soc. Serv., 131 A.D.2d 191, 193 (3d Dept. 1987); Matter of the Application of Troy Sand & Gravel Co., Inc. v. Town of Nassau, 2008 NY Slip Op 50246U, 18 Misc. 3d 1130A (Sup. Ct. 2008);   As soon as the ATC Tower received a certificate of compliance, the Planning Board undertook review of the Plaintiffs' application with speed and diligence. (R.377, 488-496, 498, 525-535).   Further, the Plaintiffs have not applied for any permits or approvals within the purview of the Building Department, thus making it impossible for the Building Department to have formulated an opinion as to any such application.

The Planning Board's deliberations are nearly complete and the Planning Board has actively processed T-Mobile's application since the time that the condition precedent imposed by T-Mobile was satisfied during August 2007.  The Planning Board promptly completed its SEQRA review, and issued a negative declaration on January 22, 2008 (R.532, R.539-543; as corrected on February 26, 2008 at R.589, 591-595).    Injunctive relief is not necessary to expedite resolution in this matter; any action to date that has delayed resolution has been attributable to T-Mobile.

In conclusion, the Plaintiffs' fifth claim should be dismissed as against Defendants Planning Board and Building Department.   There is no determination from those

Defendants which can be the subject of Court review under the substantial evidence standard.

Further, the Court should remand this matter back to the Planning Board and the Building Department for further processing because remand would not be futile. Any alleged delay to date is attributable solely to T-Mobile.

**POINT IV**
**THE RECORD INDICATES A CLEAR UNDERSTANDING OF THE ZBA**
**THAT IT COULD NOT BASE ITS DECISION ON THE PERCEIVED**
**HEALTH EFFECTS OF COMMUNICATIONS FACILITIES**
*(Addressing the Plaintiffs' eighth claim as alleged*
*against all Defendants)*

The Plaintiffs' eighth claim alleges, upon information and belief, that the ZBA's denial of T-Mobile's co-location application "was based in substantial part upon generalized public concern over the perceived health effects from the proposed radio frequency transmissions associated with the wireless facilities." (Amended Complaint at ¶205). The Plaintiffs' argument must fail because the Record clearly evidences that the ZBA understood that it could not base its decision on the issues regarding the alleged health impacts of towers.

At the November 5, 2007 meeting of the Zoning Board of Appeal, the following dialogue took place between a resident and the ZBA's chairman:

> Sheau-ling Shih [resident], 16 Vervalen Drive said children wait at the bus stop there for ten or fifteen minutes. Also, in response to Mr. Davis' [T-Mobile counsel] comments, she said studies show there is a health hazard to humans. She was also concerned about the magnetic field. Mr. Johnson [ZBA Chairman] said it was understanding [sic] of the federal law passed by Congress has [sic] removed the concerns about health risks from cell phones from consideration by local boards so if anyone in the audience felt this

was a real problem they should be talking to their congressman and
President Bush.  (R.473)

It is clear that the ZBA understood that it could not regulate on the basis of
environmental health effects.  Simply because residents raise the issue, it does not mean it
formed the basis of the ZBA's decision.   During the ZBA's deliberations on the
application there is no discussion of health effects at all. (R.557-558). Clearly this was
not the basis for the ZBA's decision. Therefore, the Plaintiffs' argument fails as the ZBA
did not base any part of its decision on the perceived health effects of communications
facilities.

Further, as discussed above, neither the Planning Board nor the Building
Department has rendered a final decision and, logically, those Defendants cannot be
claimed to have improperly based a decision on perceived health effects.

Plaintiffs' eighth claim should be dismissed as against all Defendants.   The
Record indicates that the ZBA understood that it was not permitted to consider alleged
environmental health effects.

## POINT V
### A PROHIBITION OF SERVICE CLAIM CANNOT LIE AGAINST THE PLANNING BOARD OR THE BUILDING DEPARTMENT BECAUSE NEITHER DEFENDANT HAS MADE A DETERMINATION, LEAST OF ALL ONE THAT WOULD HAVE THE EFFECT OF PROHIBITING PERSONAL WIRELESS SERVICES
*(Addressing the Plaintiffs' Sixth claim as against the
Planning Board and the Building Department)*

The Plaintiffs' argue that the Defendant ZBA's denial of their area variance
application results in a prohibition of service in violation of 47 USC §332(c)(7)(B)(i)(II).
The Plaintiffs' seek relief in the form of an injunction directing all of the Defendants to

issue the necessary permits or approvals.  The Plaintiffs' argument fails as to the Planning Board and the Building Department because as discussed at length in Point I, above, neither of those Defendants has rendered a final determination.

The TCA provides that it is a violation for a municipality to prohibit, or make decisions that have the effect of prohibiting, personal wireless services.   47 USC §332(C)(7)(B)(i)II.   The Town has not prohibited personal wireless services, but instead has required permission on a case by case basis, which is permissible.  Town of Amherst v. Omnipoint Comm. Enter., Inc., 173 F.3d 9, 14 (1st Cir. 1999).  The Plaintiffs' must prove that the Town made a decision which has the effect of prohibiting personal wireless services.

The Court's have interpreted the TCA's "prohibition of service" section to mean that municipalities "may not regulate personal wireless service facilities in such a way as to prohibit remote users from reaching 'facilities necessary to make and receive phone calls.'" Nextel Partners Inc. v. Town of Amherst, 251 F.Supp. 2d 1187, 1195-96 (WDNY 2003) (quoting Willoth, 176 F.3d at 643).   In other words, the Town cannot prevent T-Mobile from closing a gap in service.

While the Nextel Partners case also involved a challenge to a ZBA denial of an application to co-locate, and the Western District of New York ultimately found that the ZBA had prohibited service in violation of the TCA, the Nextel Partners case is distinguishable from the instant case.

In the Nextel Partners case, the ZBA was the only administrative agency responsible for issuance of the special use permit – the permit which ultimately decides whether or not the carrier can operate.  In this case, the ZBA was only charged with the

consideration of an area variance, a small part of the overall approval process.   The ZBA's denial does not have the effect of prohibiting personal wireless services.

The law distinguishes between denials which prevent a carrier from constructing facilities in a certain location versus denials that essentially prevent the carrier from closing the coverage gap at all.   Town of Amherst, 173 F.3d at 14-15 (noting that Omnipoint's existing proposal may not be the only feasible plan).

The ZBA's denial makes it more difficult for the Plaintiffs' to provide services at this location, but it does not mean that T-Mobile has been completely and entirely prevented from closing their coverage gap at all.   See New York SMSA Ltd P'ship v. Town of Clarkstown, 99 F.Supp.2d 381, 390 (SDNY 2000).

"'Individual denial is not automatically a forbidden prohibition,' but disallowing 'the only feasible plan…might amount to prohibiting personal wireless service." Sprint Spectrum L.P. v. Willoth, 176 F.3d 630, 643 (2d Cir. 1999) (quoting Town of Amherst, 173 F.3d at 14).

The Record shows that the Plaintiffs' have at least one other feasible option – the Redl site.  (R.015-075). While the Town's code does encourage co-location, it allows for an Applicant to construct a new tower upon a showing that co-location cannot be achieved (R.044-045).   The Plaintiffs' were prepared in 2003 to prove by clear and convincing evidence, as required by Town Code §240-49, that co-location would not be feasible and that the construction of the new tower would be the least intrusive means to provide service.  However, T-Mobile then decided to switch its strategy and submitted an application to co-locate on Vervalen in 2005.   While such a decision may have been made for business reasons, the result of T-Mobile's decision is not a finding that the

Town has banned personal wireless communication. See generally Town of Amherst, 173 F.3d at 14-15. Because the ZBA has such a small piece of the overall approval process, T-Mobile is unable to show that no one can satisfy the Town's requirements and, as a result, their claim for prohibition of services must fail as against the Planning Board or the Building Department. See generally id. at 15-16 ("it has not been shown that the Board will inevitably reject an alternative Omnipoint proposal…").

The Plaintiffs' sixth claim should be dismissed as against Defendants Planning Board and Building Department because T-Mobile has not been completely prevented from closing their coverage gap.

## CONCLUSION

Plaintiffs' fifth claim should be dismissed as against Defendants Planning Board and Building Department. There is no final determination from those Defendants which can be the subject of Court review under the substantial evidence standard, and remand to those Defendants would not be futile.

Plaintiffs' sixth claim should be dismissed as against Defendants Planning Board and Building Department. There is no final determination from those Defendants, and T-Mobile has not been completely prevented from closing their coverage gap. The ZBA is only responsible for a small piece of the overall approval process, which does not rise to the level of a prohibition of service under the TCA.

Plaintiffs' eighth claim should be dismissed as against all Defendants. The Record indicates that the ZBA understood that it was not permitted to consider the alleged environmental effects of communications services. Once again, neither the Planning Board nor the Building Department has made a decision and, logically, it cannot

be claimed that those Defendants improperly made a decision based on perceived health effects.

Plaintiff's ninth claim must be dismissed as against the ZBA because the ZBA did not have the jurisdiction to consider the interpretation requested submitted by T-Mobile. The ninth claim must be dismissed as against the Planning Board because the Planning Board is without authority to interpret the zoning law of the Town of LaGrange. The ninth claim must be dismissed as against the Building Department because T-Mobile failed to exhaust its administrative remedies by failing to request a written interpretation.

Plaintiff's tenth claim must be dismissed as against the Planning Board and the Building Department because a final determination is required for relief in the nature of mandamus to review under CPLR Article 78. The Planning Board's mere comment that the Town Code requires T-Mobile to seek a variance inflicts no actual or concrete injury upon T-Mobile.

As all delay in this matter is attributable to T-Mobile, and only T-Mobile, this matter should be remanded back to Defendants Planning Board and Building Department for further processing.

Dated:    July 25, 2008
          Poughkeepsie, NY 12601

                              RESPECTFULLY SUBMITTED,
                              Van DeWater & Van DeWater, LLP

                        BY:  /s Rebecca A. Valk_____
                              REBECCA A. VALK
                              Attorneys for Defendants
                              Office and P.O. Address
                              40 Garden Street
                              P.O. Box 112
                              Poughkeepsie, NY 12602
                              Telephone:  (845) 452-5900

**EXHIBIT "A" TO MEMORANDUM OF LAW**

Due to the voluminous nature of the documents, the parties were granted permission by the Court to file hard-copies of the Record with the Clerk of the Court by Order of the Honorable William C. Conner, dated July 25, 2008.  The Record was file with the Clerk by letter dated July 25, 20008 by Jon P. Devendorf, Esq., Hiscock & Barclay.

1