UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
OMNIPOINT COMMUNICATIONS INC.,
d/b/a T-MOBILE, AND
OMNIPOINT NY MTA LICENSE, LLC
                              Plaintiffs,

     - against-                                              08 CV. 2201 (WCC) (GAY)
                                                             (ECF CASE)
TOWN OF LAGRANGE,
TOWN OF LAGRANGE ZONING BOARD OF APPEALS,
TOWN OF LAGRANGE PLANNING BOARD, AND
TOWN OF LAGRANGE PLANNING, ZONING AND
BUILDING DEPARTMENT

                         Defendants.
-----------------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION

## FOR PARTIAL SUMMARY JUDGMENT

TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................1

COUNTER-STATEMENT OF FACTS……………………..................................1

ARGUMENT ...................................................................................5

    POINT I
        REMAND IN THIS CASE WOULD NOT BE
        FUTILE ..................................................................................5

        A.    Remand would not be futile under the
               Telecommunications Act……………………………….....10

        B.    Remand would not be futile under CPLR
               Article 78……………………………………………….....11

    POINT II
        PLAINTIFFS HAVE FAILED TO POINT TO ANY
        EVIDENCE OF UNEQUAL TREATMENT ....................................12

    POINT III
        THE PLAINTIFFS HAVE NOT BEEN COMPLETELY
        AND ENTIRELY PREVENTED FROM CLOSING THE
        COVERAGE GAP………………………………………………….14

    POINT IV
        THE ZBA'S DETERMINATION SHOULD BE UPHELD………...17

CONCLUSION.................................................................................................19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
OMNIPOINT COMMUNICATIONS INC.,
d/b/a T-MOBILE, AND
OMNIPOINT NY MTA LICENSE, LLC

         Plaintiffs,    MEMORANDUM OF

  - against-            LAW IN OPPOSITION TO
                   PLAINTIFFS' MOTION
                   FOR PARTIAL SUMMARY
                   JUDGMENT

                   08 CV. 2201 (WCC) (GAY)
                   (ECF CASE)

TOWN OF LAGRANGE,
TOWN OF LAGRANGE ZONING BOARD OF APPEALS,
TOWN OF LAGRANGE PLANNING BOARD, AND
TOWN OF LAGRANGE PLANNING, ZONING AND
BUILDING DEPARTMENT

         Defendants.
-----------------------------------------------------------------------x

### PRELIMINARY STATEMENT

The Defendants, Town of LaGrange, Town of LaGrange Zoning Board of Appeals, Town of LaGrange Planning Board and Town of LaGrange Planning, Zoning and Building Department, respectfully submit this memorandum of law in opposition to the Motion for Partial Summary Judgment filed by the Plaintiffs pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### COUNTER-STATEMENT OF FACTS

By letter dated December 30, 2003, Plaintiff T-Mobile submitted an application to Defendant Town of LaGrange Department of Planning, Zoning and Building (hereinafter the "Building Department"), for site plan and special use permit approval for the construction by T-Mobile of a 190' tower on lands owned by Frank Redl (hereinafter

1

referred to as the "Redl Application") (Record at 015-075)[1].  The Redl Application was placed on the April 20, 2004 agenda of the Defendant Town of LaGrange Planning Board (hereinafter the "Planning Board") for an "Initial Presentation". (R.084-096).

After April 20, 2004, T-Mobile placed the Redl Application on hold.  (R.166, April 25, 2005 letter of Jeffrey W. Davis, Esq. "After the information meeting T-Mobile elected to place the application on hold…"; Brief of Plaintiffs' at pg. 7, "T-Mobile tabled the Redl Site Application,…"). One year later, the Redl Application was withdrawn by letter from T-Mobile's counsel dated April 25, 2005. (R.166, Brief of Plaintiffs' at pg. 7).

On May 20, 2005, T-Mobile submitted a *new* application to co-locate nine (9) antennas on a tower owned by American Tower Corporation ("ATC") at 20 Vervalen Drive in the Town of LaGrange. (the "Vervalen Application") (R.167-233). The ATC Tower is governed by a January 22, 2004 Order of the Honorable Charles L. Brieant (hereinafter the "January 2004 Order") (R.076-079).  Pursuant to the January 2004 Order, ATC was permitted to remove an existing tower at 20 Vervalen Drive, construct a new monopole tower, and for Nextel of New York to locate a facility of twelve (12) antennas on the new tower.   (R.078). The Court specified in its Order that "any future modifications or additions to the New Monopole or the Nextel Facility shall comply with any existing Town Zoning Code…" (R.078).

T-Mobile appeared before the Planning Board at its workshop session on July 5, 2005 to present the Vervalen Application. (R.241). During November 2005 T-Mobile delivered an escrow deposit to the Town in the sum of $2500 to cover consultant review, pursuant to the Town's request. (R.248, 252-253). On December 14, 2005, the Town Engineer, Chazen Engineering and Land Surveying (hereinafter "Chazen") issued a

---

[1] All future references to the Record will appear as (R.___).

comment letter regarding the substance of the Vervalen Application. (R.256-259). On December 20, 2005, the Planning Board scheduled a public hearing to be held on January 17, 2006 (R.260-263).

The public hearing was opened on January 17, 2006 (R.330-333). At the end of the public hearing, some of the residents in attendance raised certain questions regarding whether ATC was in compliance with the January 2004 Order, particularly ATC's continued use of "old" (i.e. preexisting) facilities.[2] (R.333) The Town's Zoning Administrator "brought up the issue of dangling wires and said it was the first time he heard about it" and the Planning Board Chairman indicated that the "board would look into [the residents' concerns]" (R.333).    In response, T-Mobile's attorney stated the following:

> [F]rom T-Mobile's perspective [I] would prefer not to come back to the board for the public hearing until the issues [are] addressed with American Tower. (R.333)

As a result of Mr. Davis' comment, the Planning Board adjourned the public hearing (R.333).    The Town did not receive any additional communication from T-Mobile until August 7, 2007 (R.377).

As mentioned above, the failure to remove pre-existing equipment was one of the concerns of residents at the January 17, 2006 Planning Board meeting. (R.333). On April 4, 2006, ATC received a building permit to remove the pre-existing Nextel equipment shelter and relocate the existing utilities. (R.356-357, 361-362).   The Town continued to work with ATC on achieving compliance with the January 23, 2004 Order, culminating

---

[2]  The January 2004 Order provides that "…Omni at its sole cost and expense shall completely remove the Existing Tower, all guy wires and any other unnecessary above ground structures from the Property." (R.078)

in the issuance of a Certificate of Compliance on August 2, 2007 and a Use Permit on August 3, 2007 (R.337-375)

Upon issuance of the Certificate of Compliance, and in accordance with T-Mobile's wishes, the T-Mobile application was revived by T-Mobile's appearance at the September 4, 2007 Planning Board workshop meeting. (R.378). At that time, the Planning Board reminded T-Mobile that a variance from the Zoning Board of Appeals would be needed from Town of LaGrange Town Code (hereinafter the "Town Code) §240-49(G)(5)(b)[3], which prohibits communications facilities within 500 feet of any occupied residential dwelling. (R.378). The need for a variance had been previously brought to the attention of T-Mobile's counsel by letter dated April 3, 2006 (R.358-360; see also Amended Complaint at ¶91, Brief of Plaintiffs' at pg. 8).

T-Mobile submitted its application for an area variance to the ZBA by letter dated September 25, 2007 (hereinafter the "Area Variance Application") (R.378-451). Over the next four months, the following occurred:

- November 5, 2007: the ZBA opened the public hearing on the Area Variance Application, comments were received and the public hearing was adjourned (R.465-475);

- December 3, 2007: the ZBA again adjourned the public hearing as the Vervalen Application had not received a determination of significance under the State Environmental Quality Review Act ("SEQRA") from the Planning Board, acting as lead agency (R.484-487);

---

[3] Town of LaGrange Town Code Section 240-49 is attached to the Valk Declaration of July 25, 2008 as Exhibit "A".

4

- December 18, 2007: the Planning Board set a public hearing on the Vervalen Application for January 22, 2008 (R.487-496);

- January 22, 2008: the Planning Board issued a Negative Declaration under SEQRA (R.525-535, 539-543 as corrected on February 26, 2008 at R. 589, 591-595); and

- February 4, 2008: the ZBA denied the requested Area Variance Application (R.552-560, 563).

The Plaintiffs' then brought this action seeking, *inter alia*, to vacate the determination of the ZBA and for an injunction compelling all Defendants to issue any and all approvals.

## ARGUMENT

### POINT I

**REMAND IN THIS CASE WOULD NOT BE FUTILE**
*(Addressing Argument "C" in the Plaintiffs' Memorandum of Law)*

The Plaintiffs devote a significant amount of attention in the Amended Complaint and in their Memorandum of Law in support of their motion for summary judgment to allegations that the Defendants have delayed processing of the Vervalen Application and that any remand would be futile because of the alleged delay. (Amended Complaint at ¶¶55-142; Memorandum of Law of Plaintiffs' at 24-25)  However, the Record makes clear that any alleged delay in the processing of the Vervalen Application is attributable to T-Mobile.

On December 30, 2003, T-Mobile filed its *original* application – the Redl Application. (R.015-075). Approximately one month later, T-Mobile submitted the

requisite escrow check of $1,000.00 by letter dated February 4, 2004.   At that time the processing of the application commenced.   T-Mobile's counsel appeared at a meeting of the Town of LaGrange Planning Board on April 20, 2004 for an "Initial Presentation" (R.088) and the application was discussed at length. (R.088-090).

T-Mobile itself decided not to move forward with the application at the Redl site. (R.166; Memorandum of Law of Plaintiffs' at pg. 7 "T-Mobile tabled the Redl Site Application,...")   Instead, one year later, T-Mobile sent a letter to the Town stating "[a]fter the information meeting T-Mobile elected to place the application on hold and wait for the litigation surrounding the neighboring tower to be settled." (R.166; see also R.330).   It should be noted that that Vervalen litigation had settled on January 23, 2004, approximately three (3) months prior to T-Mobile's appearance at the Planning Board on April 20, 2004 (R.076-079) and T-Mobile's counsel was aware of this information (Amended Complaint at ¶69: "Immediately following the April 20, 2004 Planning Board meeting, T-Mobile was informed by Attorney Blass...that the ATC Site Litigation had 'settled'..."; Memorandum of Law of Plaintiffs' at pg. 6).   Thus, there was no need for T-Mobile to "wait" for a settlement between April 20, 2004 and April 25, 2005.

For reasons that are unclear, T-Mobile failed to prosecute an application from April 20, 2004 through May 20, 2005 - the date on which T-Mobile submitted the Vervalen Application (R.167-233).   Plaintiffs' attempts to blame the Town for the 17-month window of time from December 23, 2003 through May 20, 2005 are improper and misleading.   It was T-Mobile who chose to put the Redl application on hold.   It was T-Mobile who chose to withdraw the Redl application.   It was T-Mobile who chose to make

6

a *new* application for co-location at Vervalen. Any delay occurring between December 23, 2003 and May 20, 2005 can be attributed to T-Mobile and only T-Mobile.

T-Mobile appeared at a Planning Board workshop on July 5, 2005 for discussion of its new Vervalen Application. (R.241). The Town Engineer, Chazen, issued a comment letter on December 14, 2005 (R.256-259). At the December 20, 2005 meeting of the Planning Board, a public hearing was scheduled for January 17, 2006 (R.262).

On January 17, 2006 the Planning Board opened the public hearing (R.330-333). During the public hearing, the public in attendance raised certain questions regarding whether ATC was in compliance with the January 2004 Order. (R.333). After discussion, T-Mobile's attorney stated the following:

> [F]rom T-Mobile's perspective [I] would prefer not to come back to the board for the public hearing until the issues [are] addressed with American Tower. (R.333).

As a result of Mr. Davis' comment, the Planning Board adjourned the public hearing (R.333). Thereafter, the Town did not receive any communication from T-Mobile until August 7, 2007 (R.377; Memorandum of Law of Plaintiffs' at pg. 8).

In April 2006, the Town raised a question with T-Mobile's counsel regarding the Town's concerns about possible segmentation under SEQRA (R.358-360). The question was prompted by a contemporaneous conversation with representatives of ATC in which ATC indicated that additional providers were seeking to co-locate on the ATC Tower (R.358-360). The substance of this letter was only indirectly responded to by T-Mobile and ATC approximately twenty (20) months later (R.497, 516)

As detailed above and as evidenced in the Record at Page 333 and by T-Mobile's failure to respond to the April 2006 letter for some twenty (20) months, T-Mobile

indicated that it "would prefer not to come back to the board for the public hearing until the issues were addressed with American Tower". In conformance with T-Mobile's wishes, once the issues surrounding ATC were resolved, the T-Mobile application was scheduled for the September 4, 2007 Planning Board workshop meeting. At the September 4, 2007 meeting, T-Mobile was reminded that an area variance would be needed. {R.377, 378 (referencing the September 4, 2007 workshop meeting); Memorandum of Law of Plaintiffs' at pg. 9}

T-Mobile chose not to submit the Area Variance Application under September 25, 2007, even though the need for an Area Variance had been raised to T-Mobile at least twice before.

During the April 20, 2004 Planning Board meeting, T-Mobile's counsel asked a very specific question:

> Mr. Davis asked if in fact an antenna going on a tower needed to be 500' from the house, *even if the tower was already there*. Mr. Blass responded that the Planning Board has had at least 3 or 4 of these situations in the last couple of years. (R.090) (emphasis added)

Moments later, Mr. Blass clarified his response; "Mr. Blass said [the 500' setback requirement] would be overridden by the variance in respect to the Redl component, but it would apply to the T-Mobile application." (R.090). While it is acknowledged that Mr. Davis was seeking this information in the context of the Redl application; he was advised of the Town's opinion on the matter. [Memorandum of Law of Plaintiffs' at pg. 6 "T-Mobile was informed that.... T-Mobile's antenna attachment to such a tower would require, among other things, a separate variance with regard to Section 240-49(G)(5)(b)."]

8

Subsequently, in a letter dated April 3, 2006, the Town's Director of Planning and Zoning stated the need for the variance and noted that T-Mobile has not yet applied for the required variance (R.359; Memorandum of Law of Plaintiffs' at pg. 8).

Without any citation to the Record, the Plaintiffs' state that they have been "bounced back-and-forth like a ping pong ball between the Planning Board and the ZBA." (Memorandum of Law of Plaintiffs' at pg. 24).    The Record shows that this statement is completely inaccurate.   Such a statement implies that T-Mobile was advised to go to the ZBA, then returned to the Planning Board, to only then be advised of a "new" variance that would be needed.  This is not the case.  T-Mobile was advised on three separate occasions of the need for *one* particular variance.  T-Mobile did not make application for that variance until the third time they were advised of the need for the same, three years after they were first advised of the need for a variance in this situation. No "back-and-forth" was occurring because T-Mobile was not even at the ping-pong table!  T-Mobile was consistently advised by the Town of the variance needed, but did not act upon that advice.  T-Mobile did not "bounce the ball back" to the Town until September 25, 2007 when it finally made application for the necessary variance.

First, T-Mobile chose to withdraw the Redl Application one year after T-Mobile elected to place the Redl Application on hold.  Second, T-Mobile unequivocally stated that it did not wish to proceed with the public hearing at the Planning Board until the issues with ATC were resolved.  Third, T-Mobile chose not to respond to the April 2006 letter or to apply for the necessary variance in the interim between the January 2006 meeting and when the ATC issues resolved in August 2007.  It was only after the ATC issues were resolved, that on August 7, 2007 T-Mobile advised the Town that it wished to

"renew [its] previous application".  Once, the condition precedent imposed by T-Mobile

was satisfied on August 3, 2007 upon issuance of a use permit, the Town put T-Mobile's

application on the very next agenda of the Planning Board.


A.    Remand would not be futile under the Telecommunications Act

As a result of T-Mobile's repeated delays, this case is distinguishable from those

cases that find that remand would be futile.  In all such cases, the municipality would

attempt to delay the application through repeated requests for additional information and

by continually raising concerns about "new" issues. See Cellular Tel. Co. v. Town of

Oyster Bay, 166 F.3d 490 (2d Cir. 1999) (AT&T filed two separate special use permit

applications, and the Town Board took over a year to process each separate application);

Masterpage Comm. Inc. v. Town of Olive, 418 F.Supp.2d 66, 81 (NDNY 2005) (noting

"[t]he Town's persistent and repeated requests regarding issues previously resolved"

(emphasis added)); Omnipoint Comm. Inc. v. Vill. of Tarrytown Planning Bd., 302

F.Supp.2d 205 (SDNY 2004) (the Village subjected the applicant to a total of seven

public hearings); Omnipoint Comm. Inc. v. Common Council of the City of Peekskill;

202 F.Supp.2d 210, 227 (SDNY 2002) (noting the City undertook "persistent evasive

conduct").  Unlike the above-cited cases, it was not the Town in this instance that

dragged out and delayed the application – it was T-Mobile.

The Record clearly indicates that any alleged delay is attributable solely to T-

Mobile.  The errors alleged with the ZBA's determination should not "taint" the Planning

Board and the Building Department because, regardless of the Court's determination

regarding the ZBA's action, remand will serve a useful purpose. There is no evidence that

any of the Defendants herein have sought to obstruct T-Mobile's application.    Even assuming there were any error in the ZBA's determination, which there is not, it is not because of some ill will or intent to obstruct the application. (R.557-558)

B.    Remand would not be futile under CPLR 78

The Plaintiffs are unable to prove, were this Court to annul the decision of the ZBA, that remand for processing by the Planning Board and the Building Department would be futile.  Futility has been found when an administrative agency has given an indication of how it will act on the matter.  See Lehigh Portland Cement, 87 N.Y.2d at 140-143 (remand would be futile where the DEC had clearly and unequivocally stated its long-standing position on the issue); Matter of Cmty. Hous. Improvement Program Inc. v. NY State Div. of Hous. and Cmty Renewal, 230 A.D.2d 66, 69-70 (3d Dept. 1997).

There is nothing in the record to indicate that either the Planning Board or the Building Department has predetermined the issues to come before them. Matter of Grattan v. Dept. of Soc. Serv., 131 A.D.2d 191, 193 (3d Dept. 1987); Matter of the Application of Troy Sand & Gravel Co., Inc. v. Town of Nassau, 2008 NY Slip Op 50246U, 18 Misc. 3d 1130A (Sup. Ct. 2008);    As soon as the ATC Tower received a certificate of compliance, the Planning Board undertook review of the Plaintiffs' application with speed and diligence. (R.377, 488-496, 498, 525-535).   Further, the Plaintiffs have not applied for any permits or approvals within the purview of the Building Department, thus making it impossible for the Building Department to have formulated an opinion as to any such application.

The Planning Board's deliberations are nearly complete and the Planning Board has actively processed T-Mobile's application since the time that the condition precedent imposed by T-Mobile was satisfied during August 2007. The Planning Board promptly completed its SEQRA review, and issued a negative declaration on January 22, 2008 (R.532, R.539-543; as corrected on February 26, 2008 at R.589, 591-595). Injunctive relief is not necessary to expedite resolution in this matter; any action to date that has delayed resolution has been attributable to T-Mobile.

In conclusion, the Plaintiffs' fifth claim should be dismissed as against Defendants Planning Board and Building Department. There is no determination from those Defendants which can be the subject of Court review under the substantial evidence standard.

Further, the Court should remand this matter back to the Planning Board and the Building Department for further processing because remand would not be futile. Any alleged delay to date is attributable solely to T-Mobile.

## POINT II

### PLAINTIFFS HAVE FAILED TO POINT TO ANY EVIDENCE OF UNEQUAL TREATMENT
*[Addressing Argument A(3) in the Plaintiff's Memorandum of Law]*

The Plaintiffs allege that the ZBA's denial of the their area variance application has resulted in unreasonable discrimination against functionally equivalent wireless services in violation of TCA Section 332(c)(7)(B)(i)(I). The Plaintiffs seek relief in the form of an injunction directing all of the Defendants to issue all necessary permits or

approvals. The Plaintiffs' request fails because the record is lacks evidence that the Town has treated any of the Plaintiffs' competitors differently.

In order to prevail on an unreasonable discrimination claim under the Telecommunications Act ("TCA"), the Plaintiffs must show that the Defendants "discriminated among providers of functionally equivalent services and that these providers were treated unequally." Sprint Spectrum L.P. v. The Bd. of Zoning Appeals of the Town of Brookhaven, 244 F. Supp. 2d 108, 117 (EDNY 2003); see also Sprint Spectrum L.P. v. Willoth, 176 F.3d 630, 638 (2d Cir. 1999).

The basis of the Plaintiffs' argument is that because Nextel already exists at the site, the Town is favoring Nextel over T-Mobile. (Amended Complaint at ¶¶194-201; Memorandum of Law of Plaintiffs at pgs.22-23)   The Plaintiffs argument misconstrues the controlling legal standard.  The unreasonable discrimination standard requires an administrative agency to *treat* providers of functionally equivalent services equally, it does not dictate that the *outcome* of all applications must be equal.   To summarize, the issue is one of treatment not outcome. Smart SMR of New York v. Zoning Comm of Stratford, 995 F. Supp. 52, 59 (D. Conn. 1998) ("The Commission's act of granting BANM's application and denying Nextel's petition is not in itself actionable").  Taking the Plaintiffs' argument to its logical conclusion, the Town would be required to simply give a rubber-stamp approval any and all co-location applications once a tower and antenna have been constructed.

For example, in Omnipoint Comm. Inc. v. Common Council of Peekskill, 202 F. Supp. 2d 210 225-226 (SDNY) (2002), the Court found that the City of Peekskill had unreasonably discriminated against Omnipoint by subjecting Omnipoint to extensive

application requirements, to which other providers had not been subjected. Id. at 225. This is not the situation before the Court now, and the record contains no support for the contention that Nextel has been treated either differently or more favorably than T-Mobile.

Even if one could argue that the Town has treated Nextel differently, the Town's treatment of Nextel can be distinguished. The January 2004 Order states that the "New Tower and the Nextel Facility shall be deemed to be legal conforming uses and structures. However, any future modifications or additions to the New Monopole or the Nextel Facility shall comply with the existing Town Zoning Code;..." (R.078).    T-Mobile does not have the benefit of being designated a "legal conforming structure" such as Nextel.   Therefore, T-Mobile is subject to the Court's requirement that "any future modifications or additions to the New Monopole... shall comply with the existing Town Zoning Code."   The TCA contemplates that some discrimination among providers is allowed, as long as such discrimination is reasonable. Sprint Spectrum L.P., 244 F. Supp. 2d at 117.  Therefore, even if the Plaintiffs' could establish that the Town has treated T-Mobile and Nextel differently, such different treatment is rationale given Nextel's status as a "legal conforming structure."

## POINT III

### THE PLAINTIFFS HAVE NOT BEEN COMPLETELY AND ENTIRELY PREVENTED FROM CLOSING THE COVERAGE GAP
*[Addressing Argument A(2) in the Plaintiff's Memorandum of Law]*

The Plaintiffs argue that the Defendant ZBA's denial of their area variance application results in a "prohibition of service" in violation of 47 USC

§332(c)(7)(B)(i)(II).  The Plaintiffs seek relief in the form of an injunction directing all of the Defendants to issue the necessary permits or approvals.

The TCA provides that it is a violation for a municipality to prohibit, or make decisions that have the effect of prohibiting, personal wireless services.  47 USC §332(C)(7)(B)(i)II.  The Town has not prohibited personal wireless services, but instead has required permission on a case by case basis, which is permissible.  Town of Amherst v. Omnipoint Comm. Enter., Inc., 173 F.3d 9, 14 (1st Cir. 1999).  The Plaintiffs must prove that the Town made a decision which has the effect of prohibiting personal wireless services.

The Court's have interpreted the TCA's "prohibition of service" section to mean that municipalities "may not regulate personal wireless service facilities in such a way as to prohibit remote users from reaching 'facilities necessary to make and receive phone calls.'" Nextel Partners Inc. v. Town of Amherst, 251 F.Supp. 2d 1187, 1195-96 (WDNY 2003) (quoting Willoth, 176 F.3d at 643).   In other words, the Town cannot prevent T-Mobile from closing a gap in service.  T-Mobile is required to provide "'a showing that a good faith effort has been made to identify and evaluate less intrusive alternatives, e.g., that the provider has considered less sensitive sites, alternative system designs, alternative tower designs, placement of antennae on existing structures, etc.'" Sitetech Group, Ltd. v. Board of Zoning Appeals, 140 F. Supp. 2d 255, 264 (EDNY 2001) [citing APT Pittsburgh Ltd. P'ship v. Penn Township, 196 F.3d 469 (3d Cir. 1999)].

The law distinguishes between denials which prevent a carrier from constructing facilities in a certain location versus denials that essentially prevent the carrier from

closing the coverage gap at all. Town of Amherst, 173 F.3d at 14-15 (noting that Omnipoint's existing proposal may not be the only feasible plan).

The ZBA's denial makes it more difficult for the Plaintiffs' to provide services at this location, but it does not mean that T-Mobile has been completely and entirely prevented from closing their coverage gap at all. See New York SMSA Ltd P'ship v. Town of Clarkstown, 99 F.Supp.2d 381, 390 (SDNY 2000).

"'Individual denial is not automatically a forbidden prohibition,' but disallowing 'the only feasible plan…might amount to prohibiting personal wireless service." Sprint Spectrum L.P. v. Willoth, 176 F.3d 630, 643 (2d Cir. 1999) (quoting Town of Amherst, 173 F.3d at 14).

The Record shows that the Plaintiffs have at least one other feasible option – the Redl site. (R.015-075). While the Town's code does encourage co-location, it allows for an Applicant to construct a new tower upon a showing that co-location cannot be achieved (R.044-045). The Plaintiffs' were prepared in 2003 to prove by clear and convincing evidence, as required by Town Code §240-49, that co-location would not be feasible and that the construction of the new tower would be the least intrusive means to provide service. (R. 044) However, T-Mobile then decided to switch its strategy and submitted an application to co-locate on Vervalen in 2005. While such a decision may have been made by T-Mobile for business reasons, the result of T-Mobile's decision is not that the Town has banned personal wireless communication. See generally Town of Amherst, 173 F.3d at 14-15. Because the ZBA has such a small piece of the overall approval process, T-Mobile is unable to show that no one can satisfy the Town's requirements and, as a result, their claim for prohibition of services must fail. See

generally id. at 15-16 ("it has not been shown that the Board will inevitably reject an alternative Omnipoint proposal…").

## POINT IV

### THE ZBA'S DETERMINATION SHOULD BE UPHELD
*[Addressing Arguments A(1) and B in the Plaintiff's Memorandum of Law]*

The TCA requires that a decision be in writing primarily so the Court is not burdened with combing through the record and determining the reasons for the administrative agency's decision. Omnipoint Comm. Inc. v. Planning & Zoning Comm of the Town of Wallingford, 83 F.Supp.2d 306, 309 (D. Conn. 2000); Smart SMR of New York, 995 F. Supp. at 57.

While it is conceded that the ZBA did not carry its rationale into a separate written document, the basis of the ZBA's decision is clear within the record. The discussion and debate conducted by the ZBA is succinctly laid out by the ZBA at pages 557-558 of the record.

It is conceded that the Courts have opined that the record and the written decision are two separate documents. See Smart SMR of New York, 995 F. Supp. at 57. However, this is not a situation where the Board's analysis took place over a number of meetings and months, such as you would have with the Planning Board. The ZBA gathered information during the public hearing, as opened on November 5, 2007 and adjourned to February 4, 2008 (R. 470-475 and R. 553-557). When the public hearing was closed, the ZBA undertook an analysis of the application, and the reasons for the Board's decision are clear. (R. 557-558).   Therefore, while the ZBA did not follow the letter of the law,

the error is hardly prejudicial in that one can easily determine the grounds for the Board's decision.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a scintilla of evidence. <u>Cellular Tel. Company v. Town of Oyster Bay</u>, 1998 U.S. Dist. LEXIS 21500, 15 [quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 477 (1952)]. In this case, while the ZBA did not use the word "feasibility" outright, the ZBA did focus on the <u>Rosenberg</u> standard of whether the proposed action is more feasible than other options. <u>Cellular Tel. Co. v. Rosenberg</u>, 82 N.Y.2d 364 (1993).

The ZBA Chairman addressed the options for the applicant with regards to the Code's general and specific provisions. In discussing the various requirements of the Code, the Chairman balanced the Code's general requirement that providers should try to co-locate as much as possible, with the specific requirement that the Code attempts to balance aesthetics by preventing communications facilities within 500 feet of occupied homes. (R. 557).

ZBA member Swanson also addressed feasibility. While acknowledging the benefits of co-location, she opined that it would be more feasible to build a new tower, as the alternative is an additional imposition upon residential neighborhoods. (R. 557).

The decision was supported by more than a scintilla of evidence and should be upheld.

Under CPLR Article 78, a failure to render specific findings to deny an application will not result in invalidation of the denial if the basis for the decision and evidence relied upon can be ascertained from the record. <u>Buitenkant v. Robohm</u>, 122

A.D.2d 791 (2d Dept. 1986). As discussed above, the basis for the ZBA's decision is clearly laid at pages 557-558 of the Record. The decision should be upheld.

## CONCLUSION

The Plaintiffs motion for summary judgment should be denied. Remand in this case would not be futile as any alleged delay is attributable to T-Mobile. The Plaintiffs have failed to establish a case of unreasonable discrimination because they cannot point to evidence in the record indicating that the Town's treatment of Nextel was more favorable than the Town's treatment of T-Mobile. The ZBA's denial does not result in an improper prohibition of service, as T-Mobile has not been prevented from closing their coverage gap. The ZBA determination should be upheld for the reasons stated herein.

Dated:     August 15, 2008
           Poughkeepsie, NY 12601

                        RESPECTFULLY SUBMITTED,
                        Van DeWater & Van DeWater, LLP

                        BY: /s Rebecca A. Valk_____
                            REBECCA A. VALK
                            Attorneys for Defendants
                            Office and P.O. Address
                            40 Garden Street
                            P.O. Box 112
                            Poughkeepsie, NY 12602
                            Telephone:  (845) 452-5900