UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**OMNIPOINT COMMUNICATIONS, INC., d/b/a T-MOBILE, and OMNIPOINT NY MTA LICENSE, LLC,**

         *Plaintiffs*,

  *-vs-*

**TOWN OF LAGRANGE, TOWN OF LAGRANGE ZONING BOARD OF APPEALS, TOWN OF LAGRANGE PLANNING BOARD, and TOWN OF LAGRANGE PLANNING, ZONING, AND BUILDING DEPARTMENT,**

         *Defendants*.

Civil Action No. 08-CV-2201
(WCC) (GAY) (ECF Case)

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

 

Jon P. Devendorf
 John D. Cook
  *of Counsel*

**HISCOCK & BARCLAY, LLP**
*Attorneys for Plaintiffs*
Omnipoint Communications, Inc.,
d/b/a T-Mobile, and Omnipoint NY MTA License, LLC
Office and Post Office Address
One Park Place
300 South State Street
Syracuse, New York 13202-2878
Telephone:   (315) 425-2724
Facsimile:    (315) 425-8551
E-Mail:  jdevendorf@hblaw.com
E-Mail:  jcook@hblaw.com

## TABLE OF CONTENTS

                                                                  **Page**

**TABLE OF AUTHORITIES** .................................................................................................ii

**PRELIMINARY STATEMENT** ............................................................................................1

**ARGUMENT**............................................................................................................................2

      A.      The Court Should Grant T-Mobile's Motion And Issue A Mandatory Injunction To The Town Directing The Issuance Of All Necessary Permits And Approvals. ............................................................................................2

      B.      The ZBA Improperly Refused To Respond To T-Mobile's January 18, 2008 Letter Request. ...................................................................................... 12

      C.      Because the Town Failed to Give Reasons For Its Denial, The Court Cannot Determine As A Matter Of Law That Perceived Health Effects Were Not Considered Impermissibly.................................................................. 14

**CONCLUSION** .................................................................................................................. 16

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Cellular Tel. Co. v. Town of Oyster Bay*,
    166 F.3d 490 (2d Cir. 1999)..................................................................................11

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)................................................................................................13

*Nextel Partners, Inc. v. Town of Amherst*,
    251 F. Supp. 2d 1187 (W.D.N.Y. 2003)...............................................................10

*Omnipoint Commc'ns, Inc. v. Common Council of Peekskill*,
    202 F. Supp. 2d 210 (S.D.N.Y. 2002)...................................................................11

*SBA Commc'ns, Inc. v. Zoning Comm'n of Franklin*,
    164 F. Supp. 2d 280 (D. Conn. 2001)...................................................................11

*Smart SMR of New York, Inc. v. Zoning Comm'n of Stratford*,
    995 F. Supp. 52 (D. Conn. 1998)..........................................................................14

*Sprint Spectrum LP v. Town of Farmington*,
    No. 3:97 CV 863, 1997 U.S. Dist. LEXIS 15832 (D. Conn. Oct. 6, 1998).........14

Plaintiffs Omnipoint Communications, Inc., d/b/a T-Mobile, and Omnipoint NY MTA License, LLC (collectively, "T-Mobile") respectfully submit this Memorandum of Law in opposition to the Town's[1] Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The Town's motion is simply the latest in a long and continuing line of efforts to frustrate and indeed block T-Mobile's use of an existing wireless communications facility to close a significant coverage gap that has existed now for many years. The Town's selective approach to its motion for partial summary judgment is telling as it seeks dismissal of certain claims against certain defendants, but does not seek dismissal of the key claims asserted against the ZBA. It seems apparent even to the Town that the ZBA's conduct violated both state and federal law.[2]

Undeterred, the Town now seeks to do everything it can to get T-Mobile's collocation application back before the municipality in some shape or form so that it can issue a "better" denial and continue to block T-Mobile's ability to close the significant gap in coverage. Indeed, the Town has gone so far as to enact a new Local Law since the denial of T-Mobile's application that imposes additional hurdles for T-Mobile to overcome before the Town would permit T-Mobile to collocate its antennas on an existing tower that was constructed pursuant to the terms of an Order of this Court – an Order that resolved a prior action commenced by another wireless services provider whose application was also denied by the Town.

---

[1] Defendants, Town of LaGrange, Town of LaGrange Zoning Board of Appeals (the "ZBA"), Town of LaGrange Planning Board (the "Planning Board"), and Town of LaGrange Planning, Zoning and Building Department (the "Building Department"), are collectively referred to as the "Town."

[2] These violations, among others, are discussed fully in the papers submitted by T-Mobile in support of its Motion for Partial Summary Judgment.

Simply stated, enough is enough. The Record demonstrates that T-Mobile properly sought to collocate on an existing tower and has been stymied at every turn by the improper acts of the Town. The Town should not be allowed to take another and continuing bite of the apple in order to improperly deny T-Mobile's collocation application yet again, simply to have the parties return to this Court to start this process over. Accordingly, it is respectfully submitted that this Court should issue a mandatory injunction directing the defendants to issue any necessary approvals and permits to T-Mobile and put an end to the Town's conduct once and for all.

## ARGUMENT

**A.   The Court Should Grant T-Mobile's Motion And Issue A Mandatory Injunction To The Town Directing The Issuance Of All Necessary Permits And Approvals.**

As the Court is aware, T-Mobile has moved for partial summary judgment on its Section 332(c)(7) and Article 78 claims. For the reasons submitted to the Court in connection with that motion, T-Mobile respectfully submits that the motion should be granted and, if so, the Court should issue a mandatory injunction to the Town (including the Building Department, Planning Board, and ZBA) directing the issuance of all necessary approvals and permits to T-Mobile for the installation of its antennas on the existing ATC Tower[3].

Although the Town has not yet submitted its opposition to T-Mobile's motion, it is anticipated that the Town will take the position that the Court cannot issue the injunction sought by T-Mobile, but instead must limit any injunction to that which directs the ZBA to issue the area variance that was the subject of its denial. However, in matters such as the one before the

---

[3] The "ATC Tower" is a 150-foot monopole tower owned by American Tower Company ("ATC") at the "ATC Site," which is located at 20 Vervalen Drive in the Town of LaGrange.

Court, the appropriate remedy for violations of the TCA[4] is an injunction of the type sought by T-Mobile.

In its motion, the Town attempts to defuse this argument by suggesting that certain of the defendants (*i.e.*, the Building Department and the Planning Board) have not done anything wrong and therefore remand would not be futile.[5] In doing so, the Town places great emphasis on its position that there has been no delay on its part during the course of the municipal proceedings. While that contention is certainly debatable, delay is only one of several reasons why, in fact, remand to either the Building Department or the Planning Board would be futile and inappropriate.

The history concerning the ATC Tower is long and storied. In fact, the animosity of the Town (and its residents) towards the wireless communications tower goes back well prior to any involvement by T-Mobile. Indeed, it was OmniAmerica Towers, Inc., a subsidiary of American Tower Company ("ATC"), and Nextel of New York, Inc. ("Nextel"), a wireless services provider and competitor of T-Mobile, that first encountered the Town's refusal to comply with applicable laws when the Town improperly denied an ATC/Nextel application for the replacement of an existing radio tower with a new wireless services tower on the ATC Site. [R. 76-79.][6] Like T-Mobile, ATC/Nextel was left with no choice but to commence an action

---

[4] Communications Act of 1934, as amended by the Telecommunications Act of 1996, codified at 47 U.S.C. § 151, *et seq.*

[5] In fact, the Town claims that "remand will serve a useful purpose." (T-Mobile's Memorandum, p. 18.) However, and notably, the Town does not identify what, if any, "useful purpose" will be served by remand, and fails to even mention the recent enactment of Local Law 1 of 2008 and the affect it will have on future proceedings concerning T-Mobile's collocation application if it were to be remanded.

[6] Each page of the stipulated record is consecutively numbered, and cited herein as "R. [page number]."

challenging the denial, and they did so on June 6, 2002 (the "ATC Litigation"). [R. 76-79.] That action was subsequently settled by the parties, and pursuant to the terms of an Order dated January 22, 2004 (the "ATC Order"), installation of a 150-foot monopole tower was authorized and "deemed to be [a] legal conforming use[] and structure[]." [R. 76-79.]

More than a year later, on May 20, 2005, T-Mobile submitted its collocation application for the ATC Site to Joachim G. Ansorge, Director of the Building Department. [R. 167-222.] During the June 21, 2005 meeting, the Planning Board informed T-Mobile that the application could not proceed until such time as an old unused radio tower on the premises was removed and a fence constructed by ATC/Nextel. [R. 241.] Once it learned that these issues had been addressed, T-Mobile requested placement on the next Planning Board agenda. [R. 252.] On December 20, 2005, T-Mobile attended a Planning Board meeting to again discuss its Collocation Application, at which time a public hearing was set for January 17, 2006. [R. 262.]

At that time, T-Mobile was completely unaware of the depth of animosity of Town residents (and later, Town officials) to the existing tower and the lengths to which they would go to frustrate the pro-deregulatory and pro-competitive purpose of the TCA and the collocation requirements of the Town's own wireless ordinance. In fact, eight days prior to the public hearing, the Building Department, presumably on behalf of the Planning Board, requested five copies of the site plan with signature blocks for the Planning Board members so they would be available for execution at the conclusion of the January 17, 2006 meeting. [R. 280-286.] However, everything changed during the course of that meeting.

Indeed, once the Planning Board opened the public hearing, it was deluged with public comment that was completely against the existing ATC Tower and, by consequence, T-Mobile's collocation application. [R. 330-333.] Angered by the Town's settlement of the ATC Litigation,

public comment pertained to alleged concerns regarding health effects of cell towers, the visual impact of the ATC Tower, the fall down area of the ATC Tower, maintenance concerns with the ATC Tower, and perceived non-compliance issues with the ATC Tower vis-à-vis the ATC Order and the Town's Code. [R. 330-333.] Instead of closing the public hearing and approving the collocation application at the conclusion of the meeting as anticipated, the Planning Board instead adjourned the public hearing so that some of the residents' concerns with the ATC Tower (*i.e.*, not with T-Mobile's application) could be investigated and addressed. [R. 333.] Rather than return for meeting after meeting when resolution of the ATC Tower issues was completely outside of T-Mobile's control, T-Mobile let the Planning Board know that it would prefer not to return for the conclusion of the public hearing until the ATC Tower issues were resolved (because any efforts to move forward with its application until that time would be futile). [R. 333.]

More than two months later, and nearly one year after T-Mobile submitted its collocation application, the Town's change in position was confirmed. Indeed, in a letter dated April 3, 2006, the Director of the Building Department advised T-Mobile that he had "reconsidered" T-Mobile's collocation application and had "reviewed" the situation with "the Town's legal counsel." [R. 358-360.] This "reconsideration" and "review" led to the identification of five new "conclusions" – none of which had previously been mentioned or identified as potential issues during T-Mobile's two prior appearances before the Planning Board or discussions with Building Department representatives in connection with its collocation application. Among the "conclusions," was the Building Department's position that:

> The current special permit and site plan application is at variance with one provision of Section 240-49(5)(b) of the Town code in that the new facility is located within 500 feet of occupied residences, and no application for a variance of this requirement

> has been pursued from the ZBA as of yet. The Town has historically required variances of this requirement, where it impeded, for other co-location applications on existing tall structures.[7]

[R. 359.]

As the Record demonstrates, ATC diligently pursued issuance of a Certificate of Compliance by the Town. Despite its efforts, it took nearly a year-and-a-half for the Town to issue the Certificate of Compliance for the ATC Tower. [R. 374.] The next day, the Town issued a Use Permit to Nextel – more than **three years** after this Court issued an Order authorizing the installation of the ATC Tower and collocation of Nextel's antennas. [R. 375, 76-79.]

After the ATC Tower issues had been resolved, and a year-and-a-half after T-Mobile's last appearance before the Planning Board, T-Mobile submitted a letter to the Building Department requesting to appear before the Planning Board for continuation of its application, and it did so during the September 4, 2007 meeting. [R. 377.] During the meeting, both the Planning Board and the Director of the Building Department encouraged T-Mobile to consider building a new tower at the Redl Site,[8] rather than pursuing the proposed collocation at the ATC Site, because the Town was trying to direct wireless carriers to the Redl Site to zone and build a new tower (presumably due to public pressure) rather than utilize the ATC Tower.[9] [R. 378.] In

---

[7] Notwithstanding this statement, there is no evidence in the Record to support the Town's claim that variances have been "historically required" for collocation applications, and certainly no evidence that variances have been required where the site of the proposed collocation is an existing wireless communications tower that was erected pursuant to an Order of this Court and "deemed to be [a] legal conforming use[] and structure[]." [R. 76-79.]

[8] The "Redl Site" is a salvage yard located at 2 Sedgewick Road in Poughkeepsie.

[9] This remains the Town's desire to this day. Indeed, the Town continues to press T-Mobile to locate its wireless services facility at the Redl Site even in the papers submitted in support of its

addition, the Planning Board adopted the "conclusion" stated by the Director of the Building Department in his April 3, 2006 letter and directed T-Mobile to make an application to the ZBA for an area variance. [R. 378.]

At the time, T-Mobile took the same position that it holds now, namely that application of a 500-foot setback provision to the collocation of antennas on an existing tower (on which Nextel's antennas are already collocated and where the existing setbacks will not change) is counterintuitive and is nothing more than attempt by the Town to prohibit collocation (as required by Town Code) and thereby prohibit service. [R. 378.] However, given the state of the administrative proceedings, T-Mobile was left with no choice but to seek an area variance from the ZBA because the Building Department and the Planning Board effectively denied the pending collocation application by requiring the area variance. [R. 378-449.] T-Mobile could not proceed before the Planning Board until it received the area variance.

On November 5, 2007, T-Mobile reluctantly appeared before the ZBA to set forth its objections to the requirements for an area variance, and, in the alternative, to request the granting of the variance to allow collocation of its antennas on the ATC Tower. [R. 470-475.] During the public hearing, and in letters submitted beforehand, public comment once again reflected the residents' extreme displeasure with the Town's settlement of the ATC Litigation, and was consequently against T-Mobile's area variance application. [R. 459-463, 471-474.] Certain ZBA members echoed the public sentiment, including one who commented that "a mistake had already been made when the tower [at the ATC Site] went up in the first place; [the ZBA does not] want to make another mistake." [R. 473.] Notably, at no time during the meeting did the

---

(..continued)
Motion. (*See* Town's Memorandum, pp. 23-24.) However, from T-Mobile's perspective, there are a number of problems with that approach, not the least of which is the fact that no tower currently exists.

ZBA address or discuss the factors that must be considered pursuant to Town Code in determining a request for an area variance. [R. 470-475.]

On February 4, 2008, T-Mobile appeared again before the ZBA. [R. 553-558.] During the meeting, T-Mobile again explained that the ATC Order deemed the ATC Tower a legal conforming use and reiterated its position that a variance from setbacks to residential structures should not be required since T-Mobile is not changing the ATC Tower's setbacks, but merely adding antennas to the tower. [R. 553.] T-Mobile's argument fell upon deaf ears, and at no time during the meeting did the ZBA address or discuss any of the factors that must be considered when determining an area variance application. [R. 553-558.] Instead, public comment once again focused primarily on the residents' anger with the Town for settling the ATC Litigation, the public's displeasure with the location of the ATC Tower, and the public's concern over the ATC Tower's setbacks and fall down zone. [R. 555-557.] At the conclusion of the meeting, the ZBA unanimously voted to deny T-Mobile's request for an area variance, and by letter dated February 6, 2008, T-Mobile was advised that the ZBA denied T-Mobile's request without any identification whatsoever of a basis or reason. [R. 558, 563.]

One might think that that would be the end of the story concerning the efforts by the Town to frustrate the ability of T-Mobile to collocate on the ATC Tower, but it is not. Rather, the Town has continued its efforts, this time by enacting a new Local Law that imposes additional hurdles for a wireless services provider such as T-Mobile to collocate on an existing structure such as the ATC Tower. In what can hardly be considered a coincidence, on February 20, 2008 (*i.e.* two weeks after the ZBA denied T-Mobile's area variance request), the Town Board enacted Local Law 1 of 2008, which, in addition to the requirements of Section 240-49 that were effective at the time of T-Mobile's collocation application, also requires any

application for collocation to include the tower owner (*e.g.*, ATC) as a co-applicant and a disclosure, in writing, of the existence of all negotiations, ventures, discussions, contracts, proposals, or other active communications the tower owner has, or has had, within the preceding one year with any person or company regarding collocation at the subject tower.  In other words, if this matter was remanded to the Town, T-Mobile would have to resubmit its collocation application in its entirety, this time with ATC as a co-applicant.[10]

As the foregoing makes clear, the Town as a whole (including Town Board, the Building Department, and the Planning Board, as well as the ZBA) has engaged in a lengthy and concerted effort to prevent, or at least to delay as long as possible, T-Mobile from collocating its antennas on the ATC Tower.  In its motion, the Town suggests that remand to the Building Department and Planning Board would not be futile because it claims that (1) they have not made a "final determination," (2) there has not been any delay, and (3) there is nothing to indicate that the issues associated with T-Mobile's collocation application have been "predetermined."  However, with all due respect to the Town, this is hardly the case.

While T-Mobile did not assert a delay claim pursuant to the TCA, there has certainly been a fair amount of delay associated with the ATC Site.  Not only did the Town delay the erection of the ATC Tower by improperly denying the application of ATC/Nextel and necessitating litigation, once ATC/Nextel received the relief they sought, it took the Town over three years to issue the permit necessary to operate the wireless services facility legally.  Then, once T-Mobile submitted its application to the Town for collocation on the ATC Tower and it became apparent that the Town residents were extremely displeased (to put it mildly) with the

---

[10] As it was not included as part of the administrative record, but is relevant to T-Mobile's opposition to the Town's Motion, a true and correct copy of the Resolution enacting Local Law 1 of 2008 is attached as Exhibit A to the accompanying Declaration of Jon P. Devendorf dated August 15, 2008.

Town's decision to settle the ATC Litigation, T-Mobile was bounced back and forth between the Building Department, Planning Board, and ZBA to address a variety of issues and concerns, several of which were entirely outside of T-Mobile's control.  Finally, nearly three years after T-Mobile first submitted its application to collocate on the ATC Tower, T-Mobile's application for an area variance was summarily denied without reason or basis.

In addition to delay, the foregoing facts certainly make clear that any issues that might be remanded are undoubtedly "predetermined" against the interests of T-Mobile.  Notwithstanding the apparent position of the ZBA, it is clear that both the Building Department and the Planning Board have changed their position on T-Mobile's collocation application due to the significant public outcry and are destined to deny any applications from T-Mobile for permits or approvals necessary to collocate on the ATC Tower.  While the Planning Board was once prepared to sign off on T-Mobile's application, that is clearly no longer the case.  Indeed, during the public hearing portion of the February 4, 2008 ZBA meeting, just prior to the ZBA's denial of T-Mobile's area variance request, Alan Bell, the Chairman of the Planning Board, "urged the [ZBA] rather strongly to turn [T-Mobile's] application down."  [R. 556.]  In addition, the recent enaction by the Town Board of the new Local Law will certainly ease the Planning Board's future efforts, if they are given the opportunity to consider T-Mobile's application once again.  However, should the Court find in T-Mobile's favor on its motion, they should not be given the opportunity to do so.

The Town does not dispute that "[c]ourts have consistently held that a mandatory injunction is an appropriate remedy for violations of the TCA."  *Nextel Partners, Inc. v. Town of Amherst*, 251 F. Supp. 2d 1187, 1200 (W.D.N.Y. 2003) (issuing mandatory injunction based on conclusion that "further review by defendants would serve no useful purpose and would greatly

prejudice Nextel by further delaying its ability to provide service to the public in a non-covered area"). Indeed, the law in this Circuit is clear that "injunctive relief best serves the TCA's stated goal of expediting resolution of this type of action." *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999); *see also Omnipoint Commc'ns, Inc. v. Common Council of Peekskill*, 202 F. Supp. 2d 210, 227 (S.D.N.Y. 2002) ("Through its persistent evasive conduct, its disregard of clearly established New York law and its partisan statements and actions, the Common Council has relinquished its right to seek further review of Omnipoint's application."); *SBA Commc'ns, Inc. v. Zoning Comm'n of Franklin*, 164 F. Supp. 2d 280, 294 (D. Conn. 2001) ("this action will not be remanded back to the Commission because it would frustrate the TCA's intent to provide the aggrieved parties full relief on an expedited basis.").

However, the Town suggests that the issuance of a mandatory injunction should be limited to those instances where there is "delay" or "predetermination." While T-Mobile does not agree that an injunction is limited to only those instances, it is of no moment. The facts and circumstances of this case outlined above make clear that, even under the Town's view, a mandatory injunction is required should the Court grant summary judgment in T-Mobile's favor on any of its claims. Until now, T-Mobile has been bounced back-and-forth like a ping pong ball for years. During the course of those proceedings, T-Mobile has made everyone involved well aware of their responsibilities and obligations under the TCA and the applicable state law, yet they each have chosen to disregard the law. That said, further review of T-Mobile's collocation application would serve no legitimate purpose and would greatly prejudice T-Mobile by further delaying its ability to close the gap in its wireless services network. Therefore, an immediate mandatory injunction directing the issuance of all necessary approvals and permits is the appropriate remedy.

**B.    The ZBA Improperly Refused To Respond To T-Mobile's January 18, 2008 Letter Request.**

The Town argues that T-Mobile's Ninth Claim should be dismissed for two reasons: (1) T-Mobile failed to exhaust its administrative remedies; and (2) the letter request sought interpretation of "a matter outside of the Town of LaGrange Zoning law." (*See* Town's Memorandum, pp. 9-13.) However, both of the Town's arguments fail.

In its January 18, 2008 letter, T-Mobile requested determinations of the ZBA as to the following issues:

> (A)    Given the language in the January 23, 2004 court order settling the Nextel/OmniAmerica versus Town of LaGrange law suit regarding the subject tower, and given that the proposed T-Mobile collocation does not alter, in any way, the existing court approved tower setbacks, is Zoning Code Section 240-49(G)(5)(b), requiring a 500 foot setback to the nearest residential structure, applicable to T-Mobile's collocation application?
>
> (B)    If the Zoning Board determines Section 240-49(G)(5)(b) to be applicable to T-Mobile's application, we request the Zoning Board grant the necessary setback variances to allow T-Mobile to collocate antennas on the existing tower as collocation is required by Town Zoning Code Section 240-49(G)(10).

[R. 520-523.]

As set forth in the minutes of its February 4, 2008 meeting, the ZBA briefly addressed T-Mobile's letter request as follows:

> Mr. Johnson [*i.e.*, the ZBA Chairman] referred to the letter dated January 18 2008 that Mr. Davis had written to the board. The first point discussed the language in the 2004 court order settling the law suit with the Town of LaGrange and asked the board to make some decisions on that point. After talking to our counsel, for us to make a decision one way or another in terms of the court order, the board would have to read the court order and that is getting them outside their purpose as a zoning board of appeals where they would be interpreting the zoning code.

> Mr. Johnson referred to the second point in Mr. Davis' letter. He said this point is the reason they are here.

[R. 555.]

First, the Town claims that the ZBA lacked jurisdiction to consider T-Mobile's request because it was not presented in the first instance to "the responsible administrative official." However, as is clear from the meeting minutes, this is nothing more than an after-the-fact attempt to justify the ZBA's improper conduct. At the time, neither Mr. Johnson nor any other member of the ZBA advised T-Mobile that they were without jurisdiction to consider T-Mobile's request. Therefore, this argument should be disregarded. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.").

However, should the Court consider the Town's argument, it should similarly be disregarded as it is not based in fact. As is set forth more fully above, it was the Director of the Building Department who first advised T-Mobile's of the Town's position that an area variance would be required for collocation on the ATC Tower in his April 3, 2006 letter. [R. 358-360.] The Town's position was subsequently confirmed by both the Planning Board and the ZBA. [R. 470-471.] Therefore, while T-Mobile certainly could have submitted a formal request to the Building Inspector (who reports to the Director of the Building Department), that would have amounted to nothing more than a waste of time as it was quite clear what the response would be. Indeed, perhaps that is why neither Mr. Johnson nor any other member of the ZBA instructed T-Mobile to proceed in that manner.

The Town's second argument in support of dismissal is that "[t]he ZBA has no jurisdiction to interpret what was the intent of the Honorable Charles Brieant when he entered

the January 2004 Order because the Town of LaGrange ZBA is only given the authority to interpret the Town of LaGrange Zoning Law." (Town's Memorandum, p. 12.) T-Mobile does not necessarily disagree with the Town's argument, but it is irrelevant to the claim at issue. As is clear from a plain reading of the first question posed in the January 18, 2008 letter, T-Mobile was not requesting an interpretation of the ATC Order, but, in fact, was requesting an interpretation of Town Code. In other words, T-Mobile was properly requesting a response to a "question involving the interpretation of any provision of [the Town Code]." LaGrange, N.Y., Town Code ch. 240, art. IV, § 240-92(D). Indeed, T-Mobile was no more requesting an interpretation of the ATC Order than it was requesting an interpretation of the fact that "the proposed T-Mobile collocation does not alter, in any way, the existing court approved tower setbacks." Therefore, the Town's argument to the contrary is not supported by the reality of the situation, and should be rejected.

**C.      Because the Town Failed to Give Reasons For Its Denial, The Court Cannot Determine As A Matter Of Law That Perceived Health Effects Were Not Considered Impermissibly.**

A local authority does not violate the TCA by merely inquiring into the safety of emissions from a wireless facility. *See Smart SMR of New York, Inc. v. Zoning Comm'n of Stratford*, 995 F. Supp. 52, 58 (D. Conn. 1998). Nevertheless, the fear of the environmental effects of radio frequency emissions is an impermissible factor to be considered, either directly or indirectly, in denying an application to construct a wireless facility. *See Sprint Spectrum LP v. Town of Farmington*, No. 3:97 CV 863, 1997 U.S. Dist. LEXIS 15832, at *13 (D. Conn. Oct. 6, 1997) (citing H.R. Conf. Rep. No. 104-458). For example, as noted in *Town of Farmington*, "by considering the effects on property values caused by fear of frequency emissions, the Commission improperly indirectly based its decision on the effects of radio frequency emissions." *Id.*

As discussed more fully in the papers submitted by T-Mobile in support of its motion for partial summary judgment, the reasons for the denial of T-Mobile's collocation application were not identified. There is unrefuted evidence in the record that the wireless facility at issue would meet the FCC's radio frequency emission standard. [R. 317-318.] Nevertheless, despite the isolated statement proffered by the Town as alleged support for its argument, it is reasonable to conclude that its decision was based, at least in part, on the significant public comments concerning the perceived health effects from the proposed radio frequency transmissions, as well as the alleged affect on property values. [R. 330-332, 460, 462, 472-474, 480, 544, 545.] Therefore, the Town's motion for partial summary judgment on T-Mobile's Section 332(c)(7)(B)(iv) claim should be denied.

## CONCLUSION

For the reasons stated above and in the accompanying Declaration of Jon P. Devendorf, T-Mobile respectfully requests that the Court deny the Town's Motion for Partial Summary Judgment, together with such other and further relief as the Court deems just and proper.

Dated:  August 15, 2008                              **HISCOCK & BARCLAY, LLP**


By:  s/Jon P. Devendorf
     Jon P. Devendorf (JD2724)
     John D. Cook (JC2885)

*Attorneys for Plaintiffs*
Omnipoint Communications, Inc., d/b/a T-Mobile, and Omnipoint NY MTA License, LLC
Office and Post Office Address
One Park Place
300 South State Street
Syracuse, New York 13202-2078
Telephone: (315) 425-2724
Facsimile:  (315) 425-8551
E-Mail:  jdevendorf@hblaw.com
E-Mail:  jcook@hblaw.com

## CERTIFICATE OF SERVICE

I certify that on August 15, 2008, I filed a copy of the foregoing document with the Clerk of the Court via the CM/ECF system, which gave notice to the following attorney:

**Rebecca Ann Valk**   rvalk@vandewaterlaw.com

s/ Jon P. Devendorf
Jon P. Devendorf

SYLIB01\640364\4