UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **OMNIPOINT COMMUNICATIONS, INC., d/b/a T-MOBILE, and OMNIPOINT NY MTA LICENSE, LLC,**<br><br>*Plaintiffs*,<br><br>-*vs*-<br><br>**TOWN OF LAGRANGE, TOWN OF LAGRANGE ZONING BOARD OF APPEALS, TOWN OF LAGRANGE PLANNING BOARD, and TOWN OF LAGRANGE PLANNING, ZONING, AND BUILDING DEPARTMENT,**<br><br>*Defendants*. | **PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1**<br><br>Civil Action No. 08-CV-2201 (WCC) (GAY) (ECF Case) |

Plaintiffs Omnipoint Communications, Inc., d/b/a T-Mobile, and Omnipoint NY MTA License, LLC, (collectively, "T-Mobile"), respectfully submit this response to the Statement of Material Facts pursuant to Local Rule 56.1 of defendants Town of LaGrange, Town of LaGrange Zoning Board of Appeals (the "ZBA"), Town of LaGrange Planning Board (the "Planning Board"), and Town of LaGrange Planning, Zoning and Building Department (the "Building Department") (collectively, the "Town"):

1. On December 20, 2003, the Plaintiff Omnipoint Communications Inc. d/b/a T-Mobile (hereinafter "T-Mobile") filed an application with the Town of LaGrange for site plan and special use permit approval for the construction of a 190 foot monopole tower to be constructed on lands owned by Frank Redl at Sedgwick Road (hereinafter the "Redl Application"). (Record at 015-075)

**T-Mobile's Response:**   Not disputed. By way of further response, the Redl

Application was submitted to the Building Department. [R. 015.][1]

2. On January 22, 2004 the Honorable Charles L. Brieant signed an order in the matter of "Nextel of New York, Inc. and OmniAmerica Towers Inc. v. The Town of LaGrange, et al" (Case Number 02 Civ. 4260). (R.076-079)

**T-Mobile's Response:** Not disputed. By way of further response, the Order resolved litigation commenced in this Court by OmniAmerica Towers, Inc., a subsidiary of American Tower Company ("ATC"), and Nextel of New York, Inc. ("Nextel"), a wireless services provider and competitor of T-Mobile (the "ATC Litigation"). [R. 44, 76-79.] The ATC Litigation stemmed from the Town's denial of an ATC/Nextel application for the installation of a wireless services facility at 20 Vervalen Drive in the Town of LaGrange (the "ATC Site"). [R. 76-79.] Pursuant to the Order, installation of a 150-foot monopole tower at the ATC Site (the "ATC Tower") was authorized and "deemed to be [a] legal conforming use[] and structure[]." [R. 76-79.]

3. The Order referenced in Paragraph 2, above, was entered in the Clerk's office of the Southern District of New York on January 23, 2004. (R.076-079)

**T-Mobile's Response:** Not disputed.

4. The Redl Application was presented by T-Mobile at the April 20, 2004 workshop meeting of the Planning Board. (R.084-096)

**T-Mobile's Response:** Not disputed.

5. After April 20, 2004, T-Mobile elected to place the Redl Application on hold. (R.166, 330)

---

[1] Each page of the stipulated record is consecutively numbered, and cited herein as "R. [page number]."

**T-Mobile's Response:** Not disputed. By way of further response, soon after the April 20, 2004 Planning Board meeting, T-Mobile learned that the Town and ATC/Nextel had settled the ATC Litigation pursuant to the terms of the January 22, 2004 Order. [R. 76-79.] Thereafter, T-Mobile re-evaluated its proposed Redl Site Application in light of: (a) the Order; (b) the Town's stated goal to minimize the number of communications towers; (c) the Town's clear mandate for the collocation on existing structures; (d) the Town's requirement that an applicant exhaust all reasonable efforts to collocate on existing structures; (e) the Town's interpretation that T-Mobile's antennas at the Redl Site would require a separate variance from the existing 1987 Variance; and (f) T-Mobile's technical analysis finding that antennas at a centerline height of 138 feet on the ATC Tower would eliminate much of its service gap in the area and provide adequate and reliable wireless coverage to the subject cell. [R. 89, 166.] To comply with the Town's collocation requirement, T-Mobile tabled the Redl Application, negotiated a lease to collocate antennas at the ATC Site, and began preparing the documents required to support a collocation application to the Town. On or about May 20, 2005, T-Mobile formally withdrew the Redl Application and submitted a new application requesting a special use permit and site plan approval from the Planning Board to collocate antennas on the ATC Tower. [R. 167-222.]

6. On April 20, 2004, T-Mobile's counsel was informed by the Town Attorney of the January 2004 Order.

**T-Mobile's Response:** Not disputed.

7. On May 20, 2005, T-Mobile submitted a new application to co-locate nine (9) antennas on a tower owned by American Tower Corporation ("ATC") at 20 Vervalen Drive in the Town of LaGrange (the "Vervalen Application"). (R. 167-233)

  **T-Mobile's Response:**  Not disputed.

  8. T-Mobile appeared before the workshop meeting of the Town of LaGrange Planning Board on July 5, 2005 to present its application for co-location on Vervalen Drive. (R. 241)

  **T-Mobile's Response:**  Not disputed.

  9. By letter dated November 18, 2005, T-Mobile submitted to the Town an escrow deposit of $2,500 to cover consultant review of the Vervalen Application. (R.252-253)

  **T-Mobile's Response:**  Not disputed.

  10. By letter dated December 14, 2005, the Town Engineer, Chazen Engineering and Land Surveying issued a comment letter regarding the substance of the Vervalen Application. (R.256-259)

  **T-Mobile's Response:**  Not disputed.

  11. On December 20, 2005, the Planning Board scheduled a public hearing on the Vervalen Application for January 17, 2006. (R.260-263)

  **T-Mobile's Response:**  Not disputed.

  12. On January 17, 2006, the Planning Board opened the public hearing on the Vervalen Application. (R.330-333)

  **T-Mobile's Response:**  Not disputed.

  13. During the meeting, questions were raised by residents regarding ATC compliance with the January 2004 Court Order.

  **T-Mobile's Response:**  Not disputed. By way of further response, public comment during the meeting focused on the public's extreme displeasure with the Town's settlement of the ATC Litigation, as well as alleged concerns regarding health effects of cell towers, the visual

impact of the ATC Tower, the fall down area of the ATC Tower, maintenance concerns with the ATC Tower, and perceived non-compliance issues with the ATC Tower concerning the ATC Order and the Town's Code. [R. 330-333.]

14. On January 17, 2006, Mr. Davis, T-Mobile's counsel stated, in sum and substance that: "[F]rom T-Mobile's perspective [I] would prefer not to come back to the board for the public hearing until the issues [are] addressed with American Tower." (R.333)

**T-Mobile's Response:** Not disputed. By way of further response, instead of closing the public hearing and approving the collocation application at the conclusion of the meeting as anticipated, the Planning Board instead adjourned the public hearing so that some of the residents' concerns with the ATC Tower (*i.e.*, not with T-Mobile's application) could be investigated and addressed. [R. 333.] Rather than return for meeting after meeting, when resolution of the ATC Tower issues was completely outside of T-Mobile's control, Mr. Davis (on behalf of T-Mobile) let the Planning Board know that he would prefer not to return for the conclusion of the public hearing until the ATC Tower issues were resolved (because any efforts to move forward with its application until that time would be futile). [R. 333.]

15. On January 17, 2006, the Planning Board adjourned the public hearing on the Vervalen Application. (R.333)

**T-Mobile's Response:** Not disputed.

16. By letter dated April 3, 2006, Joachim G. Ansorge, Director of Planning, Zoning and Building, notified T-Mobile's counsel that Vervalen Application would require an area variance from the Town of LaGrange Zoning Board of Appeals ("ZBA") (R.358- 360)

**T-Mobile's Response:** Not disputed. By way of further response, in the April 3, 2006, the Director of the Building Department advised T-Mobile that he had "reconsidered" T-

Mobile's collocation application, allegedly in light of a conversation with an ATC representative, and had "reviewed" the situation with "the Town's legal counsel." [R. 358-360.] This sudden "reconsideration" and "review" led to the identification of five new "conclusions" – none of which had previously been mentioned or identified as potential issues during T-Mobile's two prior appearances before the Planning Board or discussions with Building Department representatives in connection with its collocation application. Among the "conclusions," was the Building Department's (new) position that:

> The current special permit and site plan application is at variance with one provision of Section 240-49(5)(b) of the Town code in that the new facility is located within 500 feet of occupied residences, and no application for a variance of this requirement has been pursued from the ZBA as of yet. The Town has historically required variances of this requirement, where it impeded, for other co-location applications on existing tall structures.

[R. 359.]

17.  T-Mobile did not respond to the April 3, 2006 letter, referenced in Paragraph 15, above, until January 4, 2008. (R. 516)

**T-Mobile's Response:** Disputed.  The April 3, 2006 letter did not request a response, so this statement is misleading. [R. 358-360.] By way of further response, at that time, the ATC Tower issues remained unresolved such that T-Mobile could not proceed with its collocation application that was then-pending before the Planning Board. [R. 333.] On August 2, 2007, the Town finally issued the Certificate of Compliance for the ATC Tower. [R. 374.] The next day, the Town issued a Use Permit to Nextel – more than *three years* after this Court issued an Order authorizing the installation of the ATC Tower and collocation of Nextel's antennas. [R. 375, 76-79.] Now that the ATC Tower issues had been resolved (*i.e.*, a year-and-a-half after T-Mobile's last appearance before the Planning Board), on or about August 7, 2007,

T-Mobile submitted a letter to the Building Department requesting to appear before the Planning Board for continuation of its application, and it did so during the September 4, 2007 meeting. [R. 377.] During the meeting, both the Planning Board and the Director of the Building Department encouraged T-Mobile to consider building a new tower at the Redl Site, rather than pursuing the proposed collocation at the ATC Site, because the Town was trying to direct wireless carriers to the Redl Site to zone and build a new tower (presumably due to public pressure) rather than utilize the ATC Tower. [R. 378.] In addition, the Planning Board adopted the "conclusion" stated by the Director of the Building Department in his April 3, 2006 letter and directed T-Mobile to make an application to the ZBA for an area variance. [R. 378.] At the time, T-Mobile took the same position that it holds now, namely that application of a 500-foot setback provision to the collocation of antennas on an existing tower (on which Nextel's antennas are already collocated) is counterintuitive and is nothing more than attempt by the Town to prohibit collocation (as required by Town Code) and thereby prohibit service. [R. 378.] However, given the state of the administrative proceedings, T-Mobile was left with no choice but to seek an area variance from the ZBA because the Building Department and the Planning Board effectively denied the pending collocation application by requiring the area variance. [R. 378-449.]

      18.    On April 4, 2006, ATC received a building permit to remove the pre-existing Nextel equipment shelter and to relocate the existing utilities. (R.356-357, 361-362)

    **T-Mobile's Response:**    Not disputed.

      19.    On August 2, 2007, ATC received a Certificate of Compliance. (R.374)

    **T-Mobile's Response:**    Not disputed.

      20.    On August 3, 2007, Nextel received a Use Permit. (R.375)

**T-Mobile's Response:** Not disputed. By way of further response, the Town issued the Use Permit more than *three years* after this Court issued an Order authorizing the installation of the ATC Tower and collocation of Nextel's antennas. [R. 375, 76-79.]

21. By letter dated August 7, 2007, T-Mobile requested to renew its application and to be placed on the September 4, 2007 Planning Board workshop agenda. (R.377)

**T-Mobile's Response:** Not disputed.

22. On September 4, 2007, T-Mobile appeared before the Planning Board during the workshop meeting. (R.378)

**T-Mobile's Response:** Not disputed. By way of further response, during the meeting, both the Planning Board and the Director of the Building Department encouraged T-Mobile to consider building a new tower at the Redl Site, rather than pursuing the proposed collocation at the ATC Site, because the Town was trying to direct wireless carriers to the Redl Site to zone and build a new tower (presumably due to public pressure) rather than utilize the ATC Tower. [R. 378.] In addition, the Planning Board adopted the "conclusion" stated by the Director of the Building Department in his April 3, 2006 letter and directed T-Mobile to make an application to the ZBA for an area variance. [R. 378.]

23. T-Mobile submitted an application the Town of LaGrange Zoning Board of Appeals for an area variance by letter dated September 25, 2007. (R. 378-451)

**T-Mobile's Response:** Not disputed; however, the proper citation to the Record should be [R. 378-449].

24. On November 5, 2007, the ZBA opened the public hearing on T-Mobile's application for an area variance. (R. 465-475)

**T-Mobile's Response:** Not disputed. By way of further response, T-Mobile reluctantly appeared on November 5, 2007 before the ZBA to set forth its objections to the requirements for an area variance, and, in the alternative, to request the granting of the variance to allow collocation of its antennas on the ATC Tower. [R. 470-475.] During the public hearing, and in letters submitted beforehand, public comment once again reflected the residents' displeasure with the Town's settlement of the ATC Litigation and the installation of the ATC Tower. [R. 459-463, 471-474.] Certain ZBA members echoed the public sentiment, including one who commented that "a mistake had already been made when the tower [at the ATC Site] went up in the first place; [the ZBA does not] want to make another mistake." [R. 473.] Notably, at no time during the meeting did the ZBA address or discuss the factors that must be considered pursuant to Town Code in determining a request for an area variance. [R. 470-475.]

25. On December 3, 2007, the ZBA adjourned the public hearing on T-Mobile's application for an area variance. (R.484-487)

**T-Mobile's Response:** Not disputed.

26. On December 18, 2007, the Planning Board voted to schedule a public hearing on the Vervalen Application. (R. 487-496)

**T-Mobile's Response:** Not disputed; however, the proper citation to the Record should be [R. 488-496].

27. On January 22, 2008, the Planning Board issued a Negative Declaration under the State Environmental Quality Review Act. (R.525-535, 539-543)

**T-Mobile's Response:** Not disputed. By way of further response, T-Mobile appeared before the Planning Board for the scheduled SEQRA public hearing and presented photo simulations of the proposed collocation at the ATC Site. [R. 503-505, 525-532, 536-537.]

T-Mobile's presentation also included updated propagation studies based on a company-wide upgrade of T-Mobile's propagation modeling tool. [R. 536-537.] The updated propagation studies re-affirmed the existence of a wireless services gap for T-Mobile that exists over a 3.5-mile area along State Route 55 and in the Town of LaGrange. [R. 536-537.] During the meeting, the Chairman of the Planning Board acknowledged that "the town code requires that an applicant who is proposing to put cell panels up in the town has to demonstrate to the board that co-locating on an existing tower cannot work, in order to pursue putting it on a new tower. [T-Mobile] has to apply for this on an existing tower. [The ATC Tower] will work as well as [a] tower that hasn't been built [or zoned] yet and since [the Redl] tower has not been built, in order for [T-Mobile] to apply for [a new tower] at all, [T-Mobile] would have to demonstrate that [the ATC Tower] won't work, [but the ATC Tower] will work" for T-Mobile. [R. 527.] The Planning Board then unanimously voted to approve a SEQRA Negative Declaration, finding that T-Mobile's project would not result in any significant adverse environmental impacts and, among other things, noted that the proposed collocation would not: (1) materially conflict with the community's current plans and goals; (2) impair the character or quality of important historical, archaeological, or aesthetic resources; or (3) create a hazard to human health. [R. 532, 592-595.]

      28.    On February 4, 2008, the ZBA denied T-Mobile's application for an area variance. (R.552-560, 563)

**T-Mobile's Response:**    Not disputed. By way of further response, T-Mobile appeared before the ZBA and provided the ZBA with photo simulations for the proposed collocation at the ATC Site and the revised propagation studies. [R. 553-558.] During the meeting, T-Mobile also explained that the ATC Order deemed the ATC Tower a legal

conforming use and stated its position that a variance from setbacks to residential structures should not be required since T-Mobile is not changing the ATC Tower's setbacks, but merely adding antennas to the tower. [R. 553.]

The ZBA also considered a letter dated January 18, 2008 from T-Mobile to the Building Department. [R. 520-523, 555.] The letter requested that the ZBA make the following determinations at its February 4, 2008 meeting:

> (A)   Given the language in the January 23, 2004 court order settling the Nextel/OmniAmerica versus Town of LaGrange law suit regarding the subject tower, and given that the proposed T-Mobile collocation does not alter, in any way, the existing court approved tower setbacks, is Zoning Code Section 240-49(G)(5)(b), requiring a 500 foot setback to the nearest residential structure, applicable to T-Mobile's collocation application?
>
> (B)   If the Zoning Board determines Section 240-49(G)(5)(b) to be applicable to T-Mobile's application, we request the Zoning Board grant the necessary setback variances to allow T-Mobile to collocate antennas on the existing tower as collocation is required by Town Zoning Code Section 240-49(G)(10).

[R. 520-523.] In response, the ZBA stated that T-Mobile's "first request discussed the language of the 2004 court order settling the law suit with the Town and asked the Board to make some decisions on that point and after speaking with counsel, for the ZBA to make a decision one way or another in terms of the court order, the ZBA would have to read the court order and that is getting the Board outside their purpose as a zoning board where they would be interpreting the zoning code." [R. 555.] The ZBA instead focused its discussion on whether a variance should be granted. [R. 557-558.] Notably, at no time during the February 4, 2008 meeting did the ZBA address or discuss any of the factors specified in Section 240-92(C)(2), which must be considered when determining an area variance application. [R. 553-558.]

During the public hearing portion of the meeting, public comment again focused on the residents' anger with the Town for settling the ATC Litigation, the public's displeasure with the location of the ATC Tower, the public's concern over the ATC Tower's setbacks and fall down zone, and whether T-Mobile had a hardship that warranted the granting of a variance. [R. 555-557.] T-Mobile addressed the public concerns by directing the ZBA to the previously submitted structural analysis for the ATC Tower, which demonstrated that the facility would support T-Mobile's antennas. [R. 555-557.] T-Mobile also referred the ZBA to the appropriate legal standards for granting an area variance to a public utility. [R. 555-557.]

However, at the conclusion of the meeting, ZBA members made the following statements:

> Mr. Johnson: There is a general requirement to try to co[l]locate as much a possible but then there is a specific requirement for people within 500 feet to give their approval to a communications facility.
>
> Ms. Swanson: I strongly believe in co[l]location, and think it is a good use of resources however because in this case the tower's location is there because the court settlement I do not believe the court can take away the rights of the residents within 500 feet to decide on new communications facilities which this is, it is not the subject of the previous court case. I think it is too bad that another tower will have to be built if they want to continue their operation but I would have to vote to deny this based on the legalities of the situation.

[R. 557.] The ZBA then unanimously voted to deny T-Mobile's request for a variance from Section 240-49(G)(5)(b). [R. 558.] By letter dated February 6, 2008, T-Mobile was advised that the ZBA denied T-Mobile's request; however, the letter does not identify any basis or reason for the ZBA's decision. [R. 563.]

29.   On February 26, 2008, the Planning Board adopted a corrected Negative Declaration under SEQRA. (R. 589, 591-595)

**T-Mobile's Response:**         Not disputed.

30.     T-Mobile did not request an interpretation of Town Code §240-49(G)(5)(b) from the Building Inspector. (R.520-523)

**T-Mobile's Response:**         Disputed.  The Director of the Building Department first advised T-Mobile's of the Town's position that a use variance would be required for collocation on the ATC Tower in his April 3, 2006 letter.  [R. 358-360.]  The Town's position was subsequently confirmed by both the Planning Board and the ZBA on several occasions.  [R. 470-471.]  Therefore, it is immaterial as to whether a formal request was submitted to the Building Inspector (who reports to the Director of the Building Department) as such an exercise would have amounted to nothing more than a waste of time as it was quite clear what the response would be.

Dated:  August 15, 2008                                  **HISCOCK & BARCLAY, LLP**


By:     s/Jon P. Devendorf
          Jon P. Devendorf (JD2724)
          John D. Cook (JC2885)

*Attorneys for Plaintiffs*
Omnipoint Communications, Inc., d/b/a T-Mobile, and Omnipoint NY MTA License, LLC
Office and Post Office Address
One Park Place
300 South State Street
Syracuse, New York 13202-2078
Telephone: (315) 425-2724
Facsimile:  (315) 425-8551
E-Mail:  jdevendorf@hiscockbarclay.com
E-Mail:  jcook@hiscockbarclay.com

## CERTIFICATE OF SERVICE

      I certify that on August 15, 2008, I filed a copy of the foregoing document with the Clerk of the Court via the CM/ECF system, which gave notice to the following attorney:

**Rebecca Ann Valk**     rvalk@vandewaterlaw.com

 

                                                      s/ Jon P. Devendorf
                                                           Jon P. Devendorf