UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**OMNIPOINT COMMUNICATIONS, INC., d/b/a T-MOBILE, and OMNIPOINT NY MTA LICENSE, LLC,**

*Plaintiffs*,

-vs-

**TOWN OF LAGRANGE, TOWN OF LAGRANGE ZONING BOARD OF APPEALS, TOWN OF LAGRANGE PLANNING BOARD, and TOWN OF LAGRANGE PLANNING, ZONING, AND BUILDING DEPARTMENT,**

*Defendants*.

Civil Action No. 08-CV-2201
(WCC) (GAY) (ECF Case)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

 

Jon P. Devendorf
John D. Cook
*of Counsel*

**HISCOCK & BARCLAY, LLP**
*Attorneys for Plaintiffs*
Omnipoint Communications, Inc., d/b/a T-Mobile, and Omnipoint NY MTA License, LLC
Office and Post Office Address
One Park Place
300 South State Street
Syracuse, New York 13202-2878
Telephone:   (315) 425-2724
Facsimile:    (315) 425-8551
E-Mail:  jdevendorf@hblaw.com
E-Mail:  jcook@hblaw.com

## TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ..................................................................................................ii

**ARGUMENT** ........................................................................................................................ 1

    A.    The Town Admittedly Violated The Law............................................................. 1

    B.    The Court Should Issue A Mandatory Injunction Directing The Town To Issue All Necessary Approvals and Permits...................................................... 3

    C.    T-Mobile Is Entitled To Partial Summary Judgment Under The Proper Legal Standard For A Prohibition Of Services Claim Under The TCA. ............... 5

    D.    The Town's Argument In Opposition To T-Mobile's Unreasonable Discrimination Claim Is Without Merit And Should Be Disregarded.................. 7

**CONCLUSION** ................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*APT Pittsburgh Ltd. P'ship v. Penn Twp.*, 196 F.3d 469 (3d Cir. 1999) ..................................... 8

*Cellular Telephone Company v. Town of Oyster Bay*, 166 F.3d 490 (2d Cir. 1999) .................... 4

*MetroPCS, Inc. v. City and County of San Francisco*, 400 F.3d 715 (9th Cir. 2005) .................. 8

*Nextel of New York, Inc. v. City of Mount Vernon*, 361 F. Supp. 2d 336 (S.D.N.Y. 2005) ....................................................................................................................................... 4

*Nextel Partners, Inc. v. Town of Amherst*, 251 F. Supp. 2d 1187 (W.D.N.Y. 2003) ................. 5, 7

*Nextel West Corp. v. Town of Edgewood*, 479 F. Supp. 2d 1219 (D.N.M. 2006) ........................ 8

*Omnipoint Commc'ns, Inc. v. City of White Plains*, 430 F.3d 529 (2d Cir. 2005) ........................ 6

*Omnipoint Communications, Inc. v. Common Council of Peekskill*, 202 F. Supp. 2d 210 (S.D.N.Y. 2002) ..................................................................................................... 4, 8, 9

*Sitetech Group, Ltd. v. Bd. of Zoning Appeals*, 140 F. Supp. 2d 255 (E.D.N.Y. 2001) ............... 7

*Smart SMR of New York, Inc. v. Zoning Comm'n of Stratford*, 995 F. Supp. 52 (D. Conn. 1998) ............................................................................................................................. 9

*Sprint Spectrum L.P. v. Town of Easton*, 982 F. Supp. 47 (D. Mass. 1997) ............................ 8, 9

*Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630 (2d Cir. 1999) ................................................ 6, 8

Plaintiffs Omnipoint Communications, Inc., d/b/a T-Mobile, and Omnipoint NY MTA License, LLC (collectively, "T-Mobile") respectfully submit this Reply Memorandum of Law in further support of their Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**ARGUMENT**

**A.    The Town Admittedly Violated The Law.**

In its opposition to T-Mobile's motion, the Town concedes a number of key points, not the least of which is that it failed to comply with the applicable law and issue a written decision with reasons for its denial. (*See* Town's Memorandum in Opposition, p. 17.) As is set forth more fully in T-Mobile's initial papers, the TCA requires a written decision that not only details the reasons for a denial, but also links the authority's conclusions to evidence in the record. Failure to comply with this requirement is a sufficient ground to "quash" an authority's decision. (*See* T-Mobile's Memorandum, pp. 14-16.)

The Town then asks the Court to excuse its failure to "follow the letter of the law" because "the error is hardly prejudicial in that one can easily determine the grounds for the Board's decision." (Town's Memorandum in Opposition, pp. 17-18.) According to the Town, "the reasons for the Board's decision are clear" and are "succinctly laid out by the ZBA at pages 557-558 of the record." (*Id.* at p. 17.)

However, upon review of the pages cited by the Town, the only thing that is clear is that at no time during the February 4, 2008 meeting referenced by the Town did the ZBA address or discuss any of the factors specified in Section 240-92(C)(2) of the Town Code, which must be considered when determining an area variance application. [R. 553-558.] Additionally, the ZBA never discussed whether T-Mobile was entitled to an area variance under the *Consolidated*

*Edison/Rosenberg* "public necessity" standard, which is discussed more fully on pages 16 and 17 of T-Mobile's Memorandum. To put it another way, the ZBA never discussed the issue presented by T-Mobile's application for an area variance, and it certainly did not "clearly" or "succinctly" lay out its reasons for its denial during the February 4, 2008 meeting.[1]

Indeed, the sum total of the "discussion and debate conducted by the ZBA" is comprised of seven paragraphs in the Record, which are set forth below for ease of reference:

> Mr. Johnson said they have two conflicting sections of the town code and the board needs to make a decision.
>
> Mr. Zeidan said he appreciates Mr. Davis' patience and diligence for the past three or four years. This should have been taken care of three or four years ago. He added that he planned to request that this variance be denied.
>
> Mr. Johnson noted that, as was discussed in the Town Code, there is a general requirement to try to co-locate as much as possible but then there are these specific requirements amongst which is the requirement for people within 500 feet to give their approval so there is a conflict between a general and a specific so in this case if they turn them down they need to recognize these issues.
>
> Ms. Swanson said she strongly believes in co-location, she thinks it is a good use of resources however because in this case the tower's location is there because of a court settlement she does not believe the court can take away the rights of the residents within 500 feet to decide on new communications facilities which this is, it is not the subject of the previous court case. She thinks it is too bad that another tower will have to be built if they want to continue their operation but she would have to vote to deny this based upon the legalities of the situation.
>
> Mr. Johnson made a motion to deny Omnipoint Communications request to seek relief from the Town Code stating that all communications facilities are prohibited within 500 feet of any occupied residential dwelling unless expressly permitted by all inhabitants of the dwellings noting that the code is somewhat in conflict but the specific provisions

---

[1] Even if one were to conclude that the reasons for the ZBA's denial are set forth in the Record, there can be no dispute that the ZBA did not link its conclusion to deny T-Mobile's application to evidence in the Record as it is required to do so.

>seem to override the general recommendation as discussed. Mr. Zeidan seconded the motion.
>
>Ms. Swanson wanted to put on record that she received a phone message to contact someone in the neighborhood. She did not return that phone message and she has not had any ex parte discussion about it.
>
>Mr. Johnson said he had made a motion to deny the variance and Mr. Zeidan had seconded. The board then voted unanimously to deny the application. VARIANCE DENIED

[R. 557-558.]

As is truly clear from a review of these paragraphs, not only did the ZBA fail to identify the reasons for its denial, it also did not consider the *Consolidated Edison/Rosenberg* "public necessity" standard despite the Town's incredible claim to the contrary. Indeed, as the Town admits, nowhere is the word "feasibility" even mentioned. (*See* Town's Memorandum in Opposition, p. 18.) Additionally, there is no discussion whatsoever as to how it might be more feasible for T-Mobile to close its significant gap in coverage via some means other than collocating its antennas on an existing tower. Therefore, the Town's arguments in opposition are without merit, and T-Mobile's Motion for Partial Summary Judgment should be granted.

**B.    The Court Should Issue A Mandatory Injunction Directing The Town To Issue All Necessary Approvals and Permits.**

In its opposition to the portion of T-Mobile's Motion concerning the appropriate remedy for the Town's improper conduct, the Town restates its arguments, and the facts that it believes supports those arguments, that were originally presented to the Court in the Town's Motion for Partial Summary Judgment. (*See* Town's Memorandum, pp. 1-5.) For brevity's sake, T-Mobile will not repeat its response, but will instead refer the Court to its prior submission. (*See* T-Mobile's Memorandum in Opposition, pp. 2-11.) As set forth therein, the facts make clear that, despite the Town's argument to the contrary, remand would be futile because there is substantial

evidence that demonstrates that any issues that might be remanded are undoubtedly "predetermined" against the interests of T-Mobile, especially in light of the long and storied history associated with the ATC Tower and the recent enaction of a new Local Law.

In such a case, the law is clear that the appropriate remedy is the issuance of a mandatory injunction directing the Town to issue all necessary approvals and permits. Indeed, in *Cellular Telephone Company v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999), the Second Circuit rejected the municipality's argument "that the district court should have remanded the permit applications back to the Town for compliance with remaining local procedure" because "even if the Town Board approved the special permits request, AT&T still would have been required to submit a site plan to the Town's Planning Board for review." This is essentially the argument that the Town is making to this Court, and it should be similarly rejected. Where "remand would serve no useful purpose," the Second Circuit has held that "injunctive relief best serves the TCA's stated goal of expediting resolution of this type of action." *Town of Oyster Bay*, 166 F.3d at 497.

This holding has been followed in a number of other cases venued within the Second Circuit. For example, in *Nextel of New York, Inc. v. City of Mount Vernon*, 361 F. Supp. 2d 336, 344 (S.D.N.Y. 2005), this Court concluded that substantial evidence did not support the denial of the wireless services provider's application, and it issued a mandatory injunction to all defendants – including the City, the City Council, the City Planning Board, and the Commissioner and Deputy Commission of the Department of Buildings – directing them to grant the application.

In *Omnipoint Communications, Inc. v. Common Council of Peekskill*, 202 F. Supp. 2d 210, 227 (S.D.N.Y. 2002), this Court found that "Defendants have clearly violated the TCA,"

and "the appropriate remedy is immediate injunctive relief directing the issuance of a special permit, building permit and any other applicable permits or approvals necessary for Omnipoint to construct and operate its personal wireless service facility at River House."

In *Nextel Partners, Inc. v. Town of Amherst*, 251 F. Supp. 2d 1187, 1201 (W.D.N.Y. 2003), a sister court issued a mandatory injunction to both the Town and its Zoning Board of Appeals directing the approval of the wireless services provider's special use permit for collocation of its antennas on an existing tower. It did so based on its conclusion that: (1) "Nextel has, on more than one occasion, attended a public hearing on its application for a wireless communications facility;" (2) "[d]efendants are well aware of their responsibilities and obligations under the TCA and New York State law;" (3) defendants "have willfully disregarded the law and wrongfully denied Nextel's special permit application;" and (4) therefore, "further review by defendants would serve no useful purpose and would greatly prejudice Nextel by further delaying its ability to provide service to the public in a non-covered area." *Id.* at 1200-1201.

As these examples demonstrate, "[c]ourts have consistently held that a mandatory injunction is an appropriate remedy for violations of the TCA." *Town of Amherst*, 251 F. Supp. 2d at 1200. Therefore, T-Mobile respectfully requests that this Court follow case law precedent, and issue an immediate mandatory injunction directing the Town to issue all necessary approvals and permits.

**C.   T-Mobile Is Entitled To Partial Summary Judgment Under The Proper Legal Standard For A Prohibition Of Services Claim Under The TCA.**

In its opposition to T-Mobile's Motion for Partial Summary Judgment on its claim of prohibition of wireless services under Section 332(c)(7)(B)(i)(II), the Town misstates the applicable legal standard for such a claim – "feasibility" is, in fact, irrelevant. Indeed, in *Sprint*

*Spectrum, L.P. v. Willoth*, 176 F.3d 630, 643 (2d Cir. 1999), the Second Circuit unequivocally held that "the [TCA's] ban on prohibiting personal wireless services precludes denying an application for a facility that is the ***least intrusive means*** for closing a significant gap in a remote user's ability to reach a cell site that provides access to land-lines." (emphasis added).  Although the Town purports to quote from *Willoth* in its opposition, it does not, in fact, quote from the opinion of the court; instead, the Town quotes to a parenthetical associated with a citation to another case in support of the Second Circuit's statement that "[a] local government may reject an application for construction of a wireless service facility in an under-served area without thereby prohibiting personal wireless services if the service gap can be closed by ***less intrusive means***." *Id.* (emphasis added).

The Town misquotes the Second Circuit in *Willoth* so as to suggest to this Court that an aspect of the appropriate inquiry for a prohibition of services claim is whether "the Plaintiffs have at least one other ***feasible*** option." (*See* Town's Memorandum in Opposition, p. 16 (emphasis added).)  However, as the foregoing quotations from *Willoth* make clear – feasibility is not relevant to a prohibition of services claim.[2]  Instead, what is relevant is that T-Mobile was improperly denied access to the least intrusive means of closing its significant gap in coverage (*i.e.*, collocation on an existing tower).

---

[2] "Feasibility" is relevant to a substantial evidence claim under Section 332(c)(7)(B)(iii), which is a claim that is separate and distinct from a prohibition of wireless services claim under Section 332(c)(7)(B)(i)(II).  Applying the *Consolidated Edison/Rosenberg* "public necessity" standard in a wireless services context such as this and where a substantial evidence claim has been asserted, a wireless provider such as T-Mobile must demonstrate that (1) there was a gap in service, and (2) the proposed action was more feasible than other options. *See Omnipoint Commc'ns, Inc. v. City of White Plains*, 430 F.3d 529, 535 (2d Cir. 2005).  As discussed more fully in T-Mobile's prior submissions concerning its substantial evidence claim, collocation on an existing tower is the most feasible means of closing its significant gap in coverage.  (*See* T-Mobile's Memorandum, pp. 16-18.)  The Town's strained position that it is more feasible to construct a new tower is difficult to comprehend. (*See* Town's Memorandum in Opposition, pp. 16-17.)

As is set forth more fully in T-Mobile's prior submissions, there can be no dispute that any intrusiveness associated with adding an additional set of antennas to an existing tower can be described as minimal, at worst. (*See* T-Mobile's Memorandum, pp. 20-22.) The photo simulations submitted in connection with T-Mobile's application clearly support this conclusion. [R. 269.]

Indeed, even the case law cited and quoted by the Town supports the conclusion that "placement of antennae on existing structures" is considered to be a "less intrusive alternative." (*See* Town's Memorandum in Opposition, p. 15 (quoting *Sitetech Group, Ltd. v. Bd. of Zoning Appeals*, 140 F. Supp. 2d 255, 264 (E.D.N.Y. 2001)).) In another case, summary judgment on the wireless services provider's prohibition of services claim was granted based on the following:

> the Court finds that Nextel has established that there is no less intrusive means to fill the significant gap in coverage other than to collocate antennae on an existing structure. The existing tower will remain in place regardless of whether Nextel collocates its antennae on the structure or not. The only other alternative would be for Nextel to find a site where it could build a new tower to an adequate height for the sole purpose of placing only its antennae on the structure. The Town's own telecommunications regulations unequivocally state a strong preference that wireless providers collocate antennae on existing structures . . . .

*Town of Amherst*, 251 F. Supp. 2d at 1196.

T-Mobile respectfully submits that the reasoning of the court in *Town of Amherst* is instructive, and should be adopted by this Court when it grants summary judgment on T-Mobile's Motion for Partial Summary Judgment on its claim of prohibition of wireless services.

**D.     The Town's Argument In Opposition To T-Mobile's Unreasonable Discrimination Claim Is Without Merit And Should Be Disregarded.**

In its Opposition to T-Mobile's Motion for Partial Summary Judgment on its claim of unreasonable discrimination under Section 332(c)(7)(B)(i)(I), the Town argues that T-Mobile's

Motion should be denied simply because the record "lacks evidence that the Town has treated any of the Plaintiffs' competitors differently." (Town's Memorandum in Opposition, p. 13.) In support of its position, the Town misstates the applicable law and fails to recognize the underlying facts, which support a finding that the Town acted discriminatorily in denying T-Mobile's collocation application. For these reasons, the Town's argument should be disregarded, and T-Mobile should be granted summary judgment on its claim of unreasonable discrimination.

It is well-settled that the TCA prohibits "unreasonable" discrimination against providers of functionally equivalent services. 47 U.S.C. § 332(c)(7)(B)(i)(I). However, contrary to the Town's assertions, "[u]nreasonable discrimination is not limited to cases where there is a difference in treatment among applications that seek to site identical facilities at the same location" within a short period of time. *Nextel West Corp. v. Town of Edgewood*, 479 F. Supp. 2d 1219, 1230 (D.N.M. 2006). Instead, the test is whether the unsuccessful applicant was "treated differently from other providers whose facilities are 'similarly situated' in terms of the ***'structure, placement or cumulative impact'*** as the facilities in question." *MetroPCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 727 (9th Cir. 2005) (quoting *APT Pittsburgh Ltd. P'ship v. Penn Twp.*, 196 F.3d 469, 480 (3d Cir. 1999)) (emphasis added). Moreover, "reasonable" discrimination among providers must be the result of "differing visual, aesthetic or safety concerns." *Common Council of Peekskill*, 202 F. Supp. 2d at 225 (citing *Willoth*, 176 F.3d at 638-39). Indeed, the TCA's legislative history specifically states that local governments have "discretion to treat facilities differently only in so far as they 'create different visual, aesthetic, or safety concerns . . . .'" *Sprint Spectrum L.P. v. Town of Easton*, 982 F. Supp. 47, 51 (D. Mass. 1997) (quoting H.R. Rep. No. 458, 104th Cong., 2d Sess. 208 (1996)).

Here, the Town did not deny T-Mobile's collocation application due to any of these permissible bases or legitimate concerns. The Planning Board's prior approval of a SEQRA Negative Declaration explicitly found that T-Mobile's proposed collocation would not (1) materially conflict with the community's current plans and goals; (2) impair the character or quality of important historical, archaeological, or aesthetic resources; or (3) create a hazard to human health. [R. 532, 592-595.] There is no evidence in the Record that the proposed collocation would change the setbacks of the existing ATC Tower, as T-Mobile merely seeks to add antennas to an existing structure without altering its height or compliance with FCC rules and regulations regarding emissions. [R. 294-318, 553.]

Although the Record reflects general concern and anger among Town residents with respect to the outcome of the ATC Litigation and the existence of the ATC Tower, such public opinions do not constitute legitimate grounds for denial of T-Mobile's application to collocate. *See Common Council of Peekskill*, 202 F. Supp. 2d at 222. Thus, because the Town lacked any legitimate basis on which to deny collocation while continuing to allow the operation of the ATC Tower and Nextel's antennas attached thereto, its decision constituted unreasonable discrimination against T-Mobile in violation of the TCA. *See Smart SMR of New York, Inc. v. Zoning Comm'n of Stratford*, 995 F. Supp. 52, 60 (D. Conn. 1998) (finding that the zoning authority unreasonably discriminated against a service provider where there was no legitimate basis for its decision); *Town of Easton*, 982 F. Supp. at 51 (holding that the zoning board unreasonably discriminated against a personal communications service provider where the board's denial was not based on visual, aesthetic, or safety concerns). Therefore, T-Mobile respectfully submits that the Court should grant its Motion for Partial Summary Judgment on its claim of unreasonable discrimination.

## CONCLUSION

For the reasons stated above and in the papers previously submitted by T-Mobile in support of its Motion for Partial Summary Judgment and in opposition to the Town's Motion for Partial Summary Judgment, T-Mobile respectfully requests that the Court grant its Motion, deny the Town's Motion, and issue a mandatory injunction directing the issuance of all necessary approvals and permits to T-Mobile, together with such other and further relief as the Court deems just and proper.

Dated:  August 29, 2008                     **HISCOCK & BARCLAY, LLP**


                                            By:    s/Jon P. Devendorf
                                                   Jon P. Devendorf (JD2724)
                                                   John D. Cook (JC2885)

                                            *Attorneys for Plaintiffs*
                                            Omnipoint Communications, Inc., d/b/a T-Mobile, and Omnipoint NY MTA License, LLC
                                            Office and Post Office Address
                                            One Park Place
                                            300 South State Street
                                            Syracuse, New York 13202-2078
                                            Telephone: (315) 425-2724
                                            Facsimile:  (315) 425-8551
                                            E-Mail:  jdevendorf@hblaw.com
                                            E-Mail:  jcook@hblaw.com

## CERTIFICATE OF SERVICE

I certify that on August 29, 2008, I filed a copy of the foregoing document with the Clerk of the Court via the CM/ECF system, which gave notice to the following attorney:

**Rebecca Ann Valk**   rvalk@vandewaterlaw.com

s/ Jon P. Devendorf
Jon P. Devendorf
