UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
OMNIPOINT COMMUNICATIONS INC.,
d/b/a T-MOBILE, AND
OMNIPOINT NY MTA LICENSE, LLC

                          Plaintiffs,

   - against-

TOWN OF LAGRANGE,
TOWN OF LAGRANGE ZONING BOARD OF APPEALS,
TOWN OF LAGRANGE PLANNING BOARD, AND
TOWN OF LAGRANGE PLANNING, ZONING AND
BUILDING DEPARTMENT
                          Defendants.
------------------------------------------------------------------------x

MEMORANDUM OF
LAW IN REPLY TO THE
DEFENDANTS' MOTION
FOR SUMMARY
JUDGMENT

08 CV. 2201 (WCC) (GAY)
(ECF CASE)

## **PRELIMINARY STATEMENT**

     The Defendants, Town of LaGrange, Town of LaGrange Zoning Board of Appeals, Town of LaGrange Planning Board and Town of LaGrange Planning, Zoning and Building Department, respectfully submit this memorandum of law in further support of its Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

# ARGUMENT

## POINT I

### T-MOBILE ADVANCES ARGUMENTS BASED UPON PURE SPECULATION, MANIPULATES THE FACTS IN THE RECORD AND THEN RESORTS TO REACHING FOR MATTERS OUTSIDE OF THE RECORD TO SUPPORT ITS OPPOSITION

A.   T-Mobile's contention that the Planning Board was prepared to approve its application at the January 2006 meeting is based upon pure speculation

T-Mobile bases a significant portion of its argument on its contention that "eight days prior to the public hearing, the Building Department, presumably on behalf of the Planning Board, requested five copies of the site plan with signature blocks for the Planning Board members so they would be available for execution at the conclusion of the January 17, 2006 meeting." (T-Mobile's Memorandum of Law in Opposition, pg. 4)[1]. T-Mobile creates a presumption, based on nothing more than the Town's simple request for a site plan with signature block, that the Planning Board was on the verge of approving its application at the January 2006 meeting. (Opposition at pg. 4)   Then, T-Mobile relies upon this unsupported presumption throughout its brief, arguing that the Planning Board "changed its earlier position" (Opposition at pgs. 4, 5, 10 & 13).  In other words, T-Mobile, unable to base its opposition on matters contained within the Record, has resorted to relying on pure speculation, implication and innuendo that the Planning Board radically changed course in a fit of discrimination.  (Opposition at pg. 10).

Before advancing this contrived twist, T-Mobile should have given a cursory review to Town of LaGrange Town Code §240-72 "Project Development Plans"

---

[1] References to T-Mobile's Memorandum of Law in Opposition will hereinafter be referred to as "(Opposition at pg. ___)".

2

(otherwise referred to as "Site Plans").[2] The Town's Code at §240-72(C)(3)(s) reads as follows (emphasis added):

> **(3) The application (for project development plan approval) shall be complete and in a form acceptable to the Planning board and…shall contain at least the following information:**
>
> **(s)    A signature block for Planning Board endorsement of approval, the applicant's name and address, North arrow, scale and date.**

The Town Code requires an applicant to submit a site plan with signature block in the application package.  Pursuant to Town Code §240-49(D) "all applicants for new communications facilities shall conform to the application procedures and requirements required by the special use permit review process detailed in this section, as well as those found within §§240-71 and 240-72 of this chapter." (emphasis added).  Therefore, the Town simply requested information needed from T-Mobile so that T-Mobile's application could be deemed complete, in accordance with Town Code §240-72(C)(3).  Nothing more can reasonably be inferred from the Town's request.  Its existence is a vapid circumstance.  Pointing to it is brightly illustrative that the breadth of T-Mobile's prayer for injunctive relief against all Town agencies rests on slender reads of mere oratory.

B.    T-Mobile's Manipulation of Facts in the Record

T-Mobile alleges that the Planning Board wrongfully adjourned the public hearing to address resident concerns with the ATC tower, rather than approve the application "as anticipated." (Opposition at pg. 5).  As discussed at length above, there is absolutely nothing in record to support position than an approval was "anticipated."

---

[2] A copy of Town of LaGrange 240-72 is annexed to the Valk Declaration of August 29, 2008 at Ex. A.

3

T-Mobile contends that the comment of its counsel, Mr. Davis, that "he would prefer not to come back to the board for the public hearing until the issues were addressed with American Tower" (R. 333) was in response to the Planning Board's decision to adjourn the public hearing. This contention is contradicted by the Record. A motion was made to adjourn the public hearing after Mr. Davis voluntarily offered to the Planning Board his position on how he wished to advance the application. (R. 333). Further, if T-Mobile had an objection to the public hearing being adjourned, or subsequently reconsidered its position of waiting until the ATC issues were resolved, it certainly never expressed it. The Town did not receive any communication from T-Mobile for some twenty (20) months (See Defendants' Memorandum of Law of pg. 15-16).

T-Mobile repeats its attack on the April 3, 2006 letter from Joachim Ansorge, the Director of the Building Department (Opposition at pg. 5). While undertaking this attack, T-Mobile conveniently "overlooks" a significant point. The letter was prompted by a contemporaneous conversation with Karmen Rajamani of American Tower. "In that conversation, in which Ms. Rajamani was looking to resolve American Tower Corporation's continuing non-completion of demolition and site remediation work at Vervalen Drive, she disclosed that timely resolution was significant because OmniAmerican Tower was pursuing, in addition to co-location of T-Mobile, the addition of other telecommunications providers to this tower." (R. 358).

T-Mobile completely ignores Mr. Ansorge's reference to the contemporaneous telephone conversation, and improperly gives the appearance that Mr. Ansorge's letter was born in a vacuum (Opposition at pg. 5)

4

- "I have reconsidered the status of the T-Mobile application…in light of a phone conversation with Karmen Rajamani of American Tower Corporation" (R. 358) is twisted to say "[Mr. Ansorge] advised T-Mobile that he had 'reconsidered' T-Mobile's collocation application."

- "I have reviewed the significance of that disclosure with the Town's legal counsel" (R. 358) is twisted to say that Mr. Ansorge had "'reviewed' the situation with 'the Town's legal counsel.'".

This outright sleight of hand is to create support for the Plaintiffs' contention of hostility and futility.

T-Mobile then attempts to attribute the three years that passed, from the date of Judge Brieant's consent order to the date that a Certificate of Compliance was issued to ATC, as the Town's fault. However, ATC did not make application for a building permit to remove the pre-existing Nextel equipment shelter and relocate facilities until March 20, 2006 (R. 356). During September 2006, the Town noted during an inspection that as-built drawings were needed (R. 364) but the Record shows that the same were not submitted until April 2007 (R. 365). Despite these clear gaps in which the Town waited upon ATC, T-Mobile improperly, and without any reliance upon the Record, attempts to tar the Town with them. (Opposition at pg. 6).

T-Mobile's brief is replete with efforts to project persuasion by echoing refrain rather than precise events. T-Mobile continues to rely upon one sentence in Judge Brieant's consent order that reads "the "New Tower and the Nextel Facility shall be deemed to be legal conforming uses and structures." (Opposition at pgs, 4; 6, fn. 7; 8). However, T-Mobile continues to <u>outright ignore</u> the very next sentence in the Order:

"However, any future modifications or additions to the New Monopole or the Nextel Facility shall comply with the existing Town Zoning Code;…"  (R. 78).

C.  <u>T-Mobile reaches outside the Record in an attempt to find something that would demonstrate to this Court that remand would be futile.</u>

In an attempt to bring all Town agencies into the web of injunctive relief, even though they have not rendered an adverse determination, T-Mobile goes so far as to reach outside the Record and attacks Town of LaGrange Local Law #1 of 2008, which amended the application requirements of the Town's wireless telecommunications law. The law became effective upon filing with the Secretary of State on March 4, 2008.

Whether, how and the extent to which such local legislation will be applied is a matter of future tense and prognostication.  T-Mobile's reliance on Local Law #1 of 2008 dehors the record as Local Law #1 of 2008 became effective more than one month after the ZBA rendered its decision on T-Mobile's application.  T-Mobile's reliance on Local Law #1 of 2008 is based upon nothing but innuendo and conjecture.

**POINT II**

**THE ZBA WAS WITHOUT JURISDICTION TO CONSIDER T-MOBILE'S "LETTER" INTERPRETATION REQUEST**

T-Mobile's opposition to the Town's showing that the ZBA did not have jurisdiction to render the "interpretation" requested fails on numerous grounds.

T-Mobile argues that the Town waived the jurisdictional defect because the failure to seek an interpretation from the Building Inspector was not raised on February 4, 2008 (Opposition at pgs. 12-13).  In support of this contention, T-Mobile relies upon the U.S. Supreme Court case of <u>Motor Vehicle Mfr. Assoc. of the U. S. v. State Farm Mut. Auto. Ins. Co.</u> for the principle that if an agency action is to be upheld, it must be upheld

6

on the basis articulated by the agency itself. 463 U.S. 29, 50 (1983).  The <u>Motor Vehicle</u> case analyzed the appropriate standards for the review of administrative action and discussed whether an administrative agency's action can be upheld based upon <u>rationale and findings</u> not relied upon in the decision below. 463 U.S. at 50.  The Court did not reach the question of whether the failure to exhaust administrative remedies can be waived by an "appellate" administrative agency.  Therefore, T-Mobile's reliance on <u>Motor Vehicle</u> is misplaced.

T-Mobile then argues that seeking an interpretation from the Building Inspector would have been futile for two reasons (1) the Building Inspector reports to the Director of the Building Department, who had advised them in a letter that a variance was needed; and (2) it was obvious what the Building Inspector's response would be. (Opposition at pgs. 12-14)

Town of LaGrange Town Code, Chapter 240 "Zoning" states that "The Zoning Board of Appeals shall, upon appeal from a decision by an administrative official, decide any question involving the interpretation of any provision of this Chapter."  Town Code §240-92(D)[3].  Pursuant to Town Code §240-82, the "administrative official" who makes the decision in the first instance is the Building Inspector.[4]  The Code does not say "the building inspector or anyone the building inspector may report to."  The Code is clear that the Building Inspector is the administrative official charged with the task.  T-Mobile simply did not comply with the statutory structure and its attempts to redeem itself must fail.

---

[3] Town of LaGrange Town Code Section 240-92 is attached to the Valk Declaration of July 25, 2008 as Exhibit "C".
[4] Town of LaGrange Town Code Section 240-82 is attached to the Valk Declaration of July 25, 2008 as Exhibit "B".

T-Mobile's second argument, that it was obvious what the Building Inspector's response would be, has no basis in the law. T-Mobile relies upon Mr. Ansorge's April 3, 2006 letter, in which he cited to §240-49(5)(b) on its face, and again advised T-Mobile that a variance would be needed. To reiterate, nowhere in Mr. Ansorge's April 3, 2006 letter did he interpret §240-49(5)(b) – he simply recited the black and white language of the law. This letter is insufficient to establish jurisdiction on the interpretation question, because no interpretation was made by Mr. Ansorge. See Brenner v. Sniado, 156 A.D.2d 559, 559 (2d Dept. 1989) ("Contrary to the petitioners' contention, the letter received by them from the Building Inspector outlining the proper procedures to follow to obtain subdivision approval or a variance does not constitute the statutorily prescribed prior 'decision or determination' necessary to invoke the jurisdiction of the [ZBA]").

Even if the Building Inspector's decision is foreseeable, this does not excuse the failure of an applicant to seek an opinion from the necessary administrative official. The jurisdiction of the ZBA is appellate only. Matter of Gaylord Disposal Serv., Inc. v. ZBA of the Town of Kinderhook, 175 A.D.2d 543, 544-45 (3d Dept. 1991); appeal denied by 78 N.Y.2d 863 (1991); Barron v. Getnick, 107 A.D.2d 1017, 1017 (4th Dept. 1985). There must be a previous decision to appeal to the ZBA.

T-Mobile then attempts shift the blame for the jurisdictional defect to the ZBA because the ZBA did not "instruct" it to get a decision from the Building Inspector. (Opposition at pg. 13). All T-Mobile needed to do was look to the Town's standard application to the Zoning Board of Appeals (R. 381-382). Right on the form, a form that T-Mobile had already once completed, it states that an application may be made for an "**INTERPRETATION** OF ANY PROVISIONS OF THE ZONING CODE, UPON

8

APPEAL FROM A DECISION BY AN ADMINISTRATIVE OFFICIAL." (R. 381) (emphasis in original).

In opposition, T-Mobile argues that a "plain reading" of its interpretation request it was clear that it was seeking an interpretation of the zoning code. (Opposition at pg. 14). To support its contention, T-Mobile then parses out selected segments of its original interpretation question, conveniently ignoring the repeated references to the January 2004 Order (Opposition at pg.14). Once again, T-Mobile blames the Town for its owned failed strategy. T-Mobile chose to submit an interpretation request; T-Mobile framed the issue to be presented to the ZBA; T-Mobile chose to tie its interpretation question specifically to the rulings in the January 2004 Order. T-Mobile can only blame itself for the jurisdictional defect and, as a result, its argument must fail.

### POINT III

### THE ZBA DID NOT BASE ITS DECISION ON THE PERCEIVED HEALTH EFFECTS OF COMMUNICATIONS FACILITIES

T-Mobile attempts to support a claim under the TCA of impermissible consideration of the environmental effects of radio frequency emissions based on solely the comments of the public. (Opposition at pg. 14-15). The ZBA does not have a choice about whether these comments were submitted into the Record – the public has the right to speak and submit documents during a public hearing and the Board must provide the public with the respect of hearing out their concerns. T-Mobile has not and cannot point to anything to indicate that ZBA adopted the public comments into its rationale.

## CONCLUSION

The Town's motion for summary judgment should be granted in its entirety.

Dated: August 29, 2008
Poughkeepsie, NY 12601

>RESPECTFULLY SUBMITTED,
>Van DeWater & Van DeWater, LLP
>
>BY:  /s Rebecca A. Valk_____
>REBECCA A. VALK
>Attorneys for Defendants
>Office and P.O. Address
>40 Garden Street
>P.O. Box 112
>Poughkeepsie, NY 12602
>Telephone:  (845) 452-5900