UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
OMNIPOINT COMMUNICATIONS INC.,
d/b/a T-MOBILE, AND
OMNIPOINT NY MTA LICENSE, LLC

                                      Plaintiffs,        DECLARATION

    - against-

                                                                       08 CV. 2201 (WCC) (GAY)
                                                                       (ECF CASE)

TOWN OF LAGRANGE,
TOWN OF LAGRANGE ZONING BOARD OF APPEALS,
TOWN OF LAGRANGE PLANNING BOARD, AND
TOWN OF LAGRANGE PLANNING, ZONING AND
BUILDING DEPARTMENT

                                      Defendants.
------------------------------------------------------------------------x

       Rebecca A. Valk hereby declares as follows:

       1.     I am an attorney admitted to practice law before the Courts of the State of New York, including this Court.

       2.     I am an associate with Van DeWater & Van DeWater, LLP, attorneys for the Defendants, Town of LaGrange, Town of LaGrange Zoning Board of Appeals (the "ZBA"), Town of LaGrange Planning Board (the "Planning Board") and Town of LaGrange Planning, Zoning and Building Department (the "Building Department) in this action and as such, am fully familiar with the facts and circumstances of this case based upon my review of the contents of the file maintained by this office.

       3.     I make this Declaration in support of the motion of the ZBA, the Planning Board and the Building Department for partial summary judgment and to place before the Court certain relevant documents.

       4.     Attached hereto as Exhibit A is a true and correct copy of Town of

LaGrange Town Code Section 240-72 "Project Development Plans"

Dated: August 29, 2008
       Poughkeepsie, NY 12601

                                  RESPECTFULLY SUBMITTED,
                                  Van DeWater & Van DeWater, LLP

                    BY: /s Rebecca A. Valk
                             REBECCA A. VALK
                             Attorneys for Defendants
                             Office and P.O. Address
                             40 Garden Street
                             P.O. Box 112
                             Poughkeepsie, NY 12602
                             Telephone: (845) 452-5900

# EXHIBIT "A"

### § 240-72. Project development plans.

A. Purpose. The purpose of this article is to ensure that the project development plan, architectural plans and location and dimension of buildings shall be of such character as to harmonize with the neighborhood, to accomplish a transition in character between areas of unlike character, to protect property values and to preserve and enhance the appearance and beauty of the community, and to avoid an adverse impact on adjacent land uses.

B. Applicability.
  (1) Project development plan approval by the Planning Board in accordance with this section is required for the proposed use or changes in use of land, buildings, and other structures for:
    (a) All special use permits in R-120, R-80, and R-40/60/80 Districts.
    (b) In all other districts, new principal uses, accessory uses and special permit uses and any expansion or reconstruction of existing uses.
  (2) Approval required. Where project development plan approval is required by this chapter, no building permit and, in the case of a change of use, no certificate of occupancy shall be issued by the Building Inspector until such a plan shall have been approved by the Planning Board. No certificate of occupancy shall be issued for such premises until all of the requirements of the Planning Board's approval, including any conditions attached thereto, shall have been met.
  (3) Continued conformance required. Continued conformance with such plan and requirements, including the maintenance of all improvements, shall be a condition of the continued validity of the certificate of occupancy.
  (4) Approval of revised plan; exception. Revisions of such plans shall be subject to the same approval requirements as a new application. However, a customary retail use can be substituted for another without additional review, provided that the new use does not constitute any intensification of use or change to the original project development plan as determined by the Zoning Administrator.
  (5) Exercise of power by Planning Board. The Planning Board may, subject to final approval by the Town Board and subsequent to a public hearing, adopt such rules and regulations as it deems necessary to properly exercise this power of project development plan review.

C. Application procedures.
  (1) Applications for project development plan approval shall be presented to the Planning Board at least 20 days prior to a scheduled public meeting and shall be made prior to the application for a building permit.
  (2) There shall be a project development plan approval application fee of an amount specified in the current fee schedule.
  (3) The application shall be complete and in a form acceptable to the Planning Board and should be accompanied by a detailed site plan prepared by a qualified individual or firm, including but not limited to a registered architect, professional engineer, licensed land surveyor or landscape architect, and shall contain at least the following information:
    (a) A location map, at a convenient scale, showing the applicant's entire property and all easements and streets and existing structures within 500 feet of the applicant's property.
    (b) The proposed location, size, use and architectural design of all buildings and structures.
    (c) Any proposed division of buildings into units of separate occupancy.
    (d) Existing topography and proposed grade elevations at a contour interval of not more than two feet, unless otherwise specified by the Planning Board; soil types; designated wetlands; one-hundred-year floodplain areas; terrain with slopes in excess of 10%; and the location of all trees with a diameter greater than eight inches diameter breast high (DBH) or a general tree line indicating a forested land cover, with appropriate notations indicating the various significant tree sizes.
    (e) The location and capacity or number of all existing and proposed roads, parking and truck loading areas, including access and egress drives.
    (f) The location of outdoor storage and display areas, if any.

(g) The location, description and design of all existing and proposed site improvements, including pavement, walks, curbing, drains, culverts, retaining walls and fences, parks, open space and recreation facilities.

(h) A description of the method of sewage disposal and the location of such facilities.

(i) A description and the location of all water supply facilities, including wells, casings, pumps, mains, hydrants and storage tanks.

(j) The location, height, design and size of all signs.

(k) Identification of proposed landscaping and buffer screening areas.

(l) The location and design of lighting and communications facilities.

(m) The location, type and design of all waste handling facilities.

(n) The character and location of all power distribution and transmission lines.

(o) The location and description of all subsurface site improvements and facilities.

(p) Landscaping: grading and landscaping plan.

(q) Cut and fill: extent and amount of cut and fill for all disturbed areas, including before-and-after profiles of typical development areas, parking lots and roads. All excavation shall comply with the provisions of § 240-67B(3) of this chapter.

(r) Stormwater management. Adequate provisions for quantitative and qualitative control of stormwater runoff shall be provided. Methods to include water quality treatment measures, either structural or nonstructural, retention, detention, infiltration, etc. and piping or channeling to existing drainage systems during and after construction, and shall comply with the requirements set forth in Chapter 197 of the Town Code. **[Amended 10-24-2007 by L.L. No. 4-2007]**

(s) A signature block for Planning Board endorsement of approval, the applicant's name and address, North arrow, scale and date.

(t) Additional information. At the request of the Planning Board, any other pertinent information as may be necessary to determine and provide for the proper enforcement of specific provisions of this chapter shall also be provided.

(u) SEQR. No application shall be deemed complete without compliance with state environmental quality review (SEQR), Editor's Note: See Environmental Conservation Law § 8-0101 et seq. including an environmental assessment form (EAF) and, where necessary, a lead agency determination, a negative or positive declaration and the submission of an acceptable draft environmental impact statement (DEIS).

(4) Exceptions. With the advice of Planning Board consultants, the Town Engineer, and planning staff in appropriate circumstances, the Planning Board may waive the provision of any items of information listed in § 240-72 for minor project development plans.

D. Public hearing and action by Planning Board.

(1) The applicant shall notify, by certified mail, all adjacent property owners of the date, time, place and subject of the public hearing at which the project development plan will be reviewed. Such notice shall not be required for adjourned dates. The records of the Receiver of Taxes of the Town of LaGrange shall be deemed conclusive as to ownership, and the notice shall be deemed complete when deposited in a properly addressed postpaid envelope in the United States Mail. Proof of such mailing shall be submitted to the Planning Board Secretary prior to the public hearing.

(2) The applicant shall be responsible for advertising the public hearing in a newspaper of general circulation and shall deliver an affidavit of such publication to the Planning Board Secretary prior to or at the public hearing.

(3) Within 45 days of the date of the completion of the public hearing and a determination by the Town Engineer that the application is technically sufficient, the Planning Board shall act to approve, approve with modifications or disapprove the proposed project development plan. A copy of the Board's decision shall be filed in the offices of the Town Clerk and the Zoning Administrator and a copy thereof mailed to the applicant.

(4) Within 60 days of the date of approval or approval with modifications, the applicant shall present to the Planning Board Chair a corrected final project development plan in reproducible form, including any modification required by the Planning Board as a condition of its approval. Upon verification by the Planning Board that the plan complies with the requirements of the Board, the plan shall be endorsed by the Planning Board Chair and properly filed with the Zoning Administrator, the Planning Board and the Town Clerk, and the Town Engineer's office. No building permit shall be issued until compliance with this section is complete.

E. Planning Board standards for project development plan approval. In preparing its decision concerning any project development plan application, the Planning Board shall consider the nature, arrangement and appearance of all buildings and uses of the lot, including their potential impact on adjacent properties, architectural features, and land uses, so that:

(1) They will have a harmonious relationship with the existing and planned development of contiguous lands and adjacent neighborhoods.

(2) They will have no material adverse effect upon the desirability of such neighborhoods for the uses contemplated by this chapter.

(3) They will be consistent with provisions of the Town of LaGrange Comprehensive Plan.

(4) New structures will be sited and located to take advantage of solar access insofar as practical, including the orientation of proposed buildings with respect to sun angles, the shading and windscreen potential of existing and proposed vegetation both on and off the site, and the impact on solar access to adjacent uses and properties.

(5) The project development plan shall reflect an awareness of and sensitivity to the views, terrain, soils, plant life, and other unique qualities of the site and shall, to the maximum extent possible, preserve and enlarge upon these assets for recreation, scenic, or conservation purposes.

(6) The proposed use, buildings and other structures, including outside storage areas, recreational areas, site development, landscaping, and off-street parking and loading, shall conform to all of the requirements of this chapter, Chapter 203, Subdivision of Land, the Highway Specifications and all other applicable Town laws.

F. Detailed standards. The following detailed standards must be followed in all project development plans:

(1) Pedestrian and vehicular access, traffic circulation and the general layout of the site shall be properly planned with regard to the safety of cars and pedestrians using the site, as well as those on neighboring properties and streets.

   (a) Where reasonable alternate access is available, the vehicular access to the lot for a use permitted only in a commercial or industrial district shall be arranged to avoid traffic use of local residential streets.

   (b) Where a lot has frontage on two or more streets, the access to the lot shall generally be provided where there is lesser potential for traffic congestion and for hazards to traffic and pedestrians.

   (c) The street giving access to the lot shall have traffic-carrying capacity and shall have a suitable travel way and other improvements to accommodate the amount and types of traffic generated by the proposed use.

   (d) Where necessary to safeguard against hazards to traffic and pedestrians and/or to avoid traffic congestion, provision shall be made by the applicant for turning lanes, traffic directional islands, frontage road driveways and traffic controls within the street.

   (e) Access driveways shall be of a design and have sufficient capacity to avoid backup of entering vehicles within any street.

   (f) Driveways into the lot shall not exceed a grade of 10% and shall meet the street right-of-way line and travel way of the street in such a manner as to conform to the standard cross section for the street under Town specifications. See § 240-42L for more detailed driveway specifications.

(2) Stormwater pollution prevention plans. **[Amended 10-24-2007 by L.L. No. 4-2007]**

    (a) A stormwater pollution prevention plan consistent with the requirements of Town of LaGrange Town Code Chapter 197 shall be required for project development plan approval. The SWPPP shall meet the performance and design criteria and standards in Chapter 197, Article V. The approved project development plan shall be consistent with the provisions of Chapter 197.

    (b) Provision shall be made on the site for the management of stormwater, including the collection and disposal thereof, in the following manner:

        [1] To assure the usability of off-street parking and loading spaces.

        [2] To avoid hazards to pedestrians and vehicular traffic on the lot and in any street.

        [3] To avoid stormwater flow across sidewalks and other pedestrianways.

        [4] To protect watercourses and wetlands from pollution, erosion and sedimentation.

        [5] To avoid an increase in the postdevelopment peak rate of runoff from the predevelopment peak rate of runoff from the site.

        [6] To avoid an amount of discharge and time of concentration of flow beyond the capacity of downstream drainage facilities.

        [7] To avoid upstream and downstream flooding.

(3) Erosion and sediment control. Provisions shall be made for the control of erosion and sedimentation and for avoiding siltation of streams and wetlands, Town roads and storm drainage systems, or the accumulation of sediment on adjoining properties both during construction and upon completion thereof. The applicant must prepare and design a erosion and sediment control plan utilizing temporary and permanent erosion and sediment control measures, to include an inspection and maintenance schedule, sequencing schedule, and appropriate erosion and sediment control notes in accordance with the New York State Standards and Specifications for Erosion and Sediment Control, latest revised edition, and with requirements set forth in Town Code Chapter 197 and § 240-45B. **[Amended 10-24-2007 by L.L. No. 4-2007]**

(4) Sanitation. Proper provision shall be made for the water supply and sewage disposal requirements of the proposed use. Central water supply and/or sewage disposal systems and private on-site systems shall be designed and constructed in accordance with applicable county and/or state law. In addition, provision shall be made for the collection, storage and disposal of solid wastes accumulated in connection with the proposed use and for control of litter by means of receptacles, fences or other means.

(5) Fire protection. Proper provision shall be made for fire protection, taking into account any recommendations of the Fire District Board of Commissioners and including the following:

    (a) Suitable location for and access to fire hydrants and/or fire ponds and other water storage.

    (b) Suitable access to buildings and storage areas for operation of fire protection vehicles and equipment.

    (c) Sufficient controls on traffic and parking to permit access by fire protection vehicles in emergencies.

    (d) Adequate circulation driveways within the lot, coordinated with access to other lots, to permit access by fire protection vehicles.

(6) Lighting. The location, height, design, arrangement and intensity of outside lighting, including the illumination of signs, shall minimize glare. Such lighting shall also avoid creating hazards to traffic and shall harmonize with the neighborhood.

(7) Outdoor deposit. Outdoor deposit shall be located in the areas shown on the project development plan and shall be limited and enclosed in each district as follows:

    (a) In the R-40/60/80, R-80, and R-120 Districts, there shall be no outdoor deposit areas, except areas for the temporary storage of solid wastes and provided that such areas are enclosed.

    (b) No outdoor deposit shall extend within less than the minimum building setback distances specified on § 240-28, Schedule B, Editor's Note: Schedule B is included at the end of this chapter. from the center line or right-of-way line of a state highway, county road or Town road or from any

noncommercial district boundary line.

    (c) In addition, in Commercial and Town Center Districts, no outdoor deposit shall extend within less than the minimum building setback distances from a property line specified on Schedule B.

    (d) All outdoor deposit areas shall be limited in area to no more than 20% of a lot area or 20% of the ground coverage of all buildings, whichever is smaller.

    (e) All outdoor deposit areas shall be screened from view from any abutting property.

(8) Landscaping shall be provided and permanently maintained on the lot to conform to the following:

    (a) All portions of the lot not covered by buildings and other structures, outdoor deposit areas, areas for off-street parking, loading and driveways and any other paved areas shall be suitably landscaped with trees, shrubs, lawns or other suitable landscaping or, if not disturbed by filling, grading, excavation or other construction activity, may be left as natural terrain when having a location, character, size and shape and vegetative cover that supports the landscaping plan for the lot.

    (b) Landscaping shall be designed with consideration for enhancement of the appearance of the lot, for protection from wind, for air pollution reduction and for temperature modification.

    (c) In Commercial, Industrial, Hamlet, TC-B and TC-R Districts, the area specified for minimum building setback distances on Schedule B Editor's Note: Schedule B is included at the end of this chapter. from any noncommercial district boundary line shall be suitably landscaped with evergreen shrubs or trees or such evergreens in combination with embankments, fences, and/or walls so as to provide a transition to the noncommercial districts. Suitable natural terrain and existing evergreen trees and shrubs may be preserved or augmented with new planting to satisfy the landscaping requirement in such setback area.

    (d) Off-street parking and loading areas shall be provided with landscaped planting islands as provided in § 240-42.

    (e) All off-street loading docks located in the Town Center District and visible from any street or residential area shall be screened from view by means of fences, walls, embankments or evergreen shrubs or trees.

    (f) All landscaping materials shall be of a type and/or species suitable for the location of the lot in the Town and suitable for the soil conditions on the lot and shall be planted and maintained in accordance with good landscaping practice.

(9) Handicapped persons. The project development plan, for any use to which the public is expected to visit, shall make proper provision for buildings and site developments that are accessible to and functional for physically handicapped persons, such as by provision of walks and ramps of suitable width and grade, curb cuts, identified wide parking spaces and ground-level building entrances. The New York State Uniform Fire Prevention and Building Code requirements shall apply to all project development plans.

(10) Existing streets. Where the lot has frontage on an existing street, proper provision shall be made for the grading and improvement of shoulders and sidewalk areas within the right-of-way of the street and for provision of curbs and sidewalks in accordance with the pattern of development along the street. Where necessary to provide for suitable access or for a system of neighborhood circulation streets, provision shall also be made for appropriate continuation and improvement of streets terminating at the lot where the use is to be located.

(11) Architecture.

    (a) The design of all structures shall be harmonious with the surrounding landscape character and shall be compatible with those surrounding structures which respect traditional design themes in LaGrange, Dutchess County and the Hudson Valley. Compatibility shall be determined by a review of proposed:

        [1] Use of materials;

        [2] Scale;

        [3] Mass;

      [4] Height;

      [5] Color;

      [6] Texture;

      [7] Themes and details; and

      [8] Location of the structure or structures on the site.

(b) The Planning Board reserves the right, at the developer's expense, to solicit professional advice on issues of design and compatibility. The Planning Board may recommend and the Town Board may adopt specific design guidelines, including preferred architectural styles, to guide applicants for project development plans under this section.